This is an appeal from an order denying the petition of appellant seeking to have the court modify its orders allowing special master's fees.
By final decree of foreclosure herein, appellee, Leon J. C. Harton, was appointed special master and directed to advertise the mortgaged property, make sale thereof for cash, *Page 1524 
report the sale, receive certain money from the receiver and disburse the moneys received as specified in the decree.
The master reported sale of the property by him for $190,100.00, whereupon the sale was confirmed by the court and execution and delivery of master's deed ordered.
The master, after confirmation of sale, reported there had been a great responsibility placed upon him by reason of the large sum of money received and voluminous duties required of him and on ex parte application a fee of $2,000.00 was allowed him by order of court.
The master thereupon filed a preliminary report of disbursements, which he failed to sign, with 14 vouchers attached and upon ex parte application by order of court his fee was increased to $2,500.00. The master thereupon filed final report of disbursements, which he also failed to sign, to which was attached three vouchers. This was approved by the court.
After making of the several orders fixing compensation up to $2,500.00, for the master who made the sale and disbursed the moneys received, complainant petitioned the court to modify the orders fixing master's fees so as to reduce the fees to the master who made the sale to the amount fixed by statute. This petition came on for hearing and was denied by the court.
At the hearing upon the petition to reduce the master's fees, the special master who made the sale and disbursed the moneys under the several orders of the court testified to the alleged voluminous work by him substantially as follows:
 "A. Advertising and making sale of the property.
 B. Four trips from Daytona Beach to DeLand, searching for taxes, paying taxes, filing reports and canceling water assessments. *Page 1525 
 C. Three trips to Ormond to ascertain amount of city taxes and assessments for paving and water liens.
 D. Trip from Camp Foster (near Jacksonville) to Daytona Beach for delivery of deed.
 E. Drawing report of sale and order confirming same; drawing two reports of disbursements and orders confirming disbursements; presenting the several master's reports to the court and filing the master's reports and the orders of confirmation with the clerk in DeLand.
 F. Answering numerous communications from the receiver and attending several conferences at the request of the receiver; to wit, five, and answering communications from the purchaser of the property."
B. As to the four trips from Daytona Beach to DeLand, searching for and paying taxes, presumptively the amount of these could have been ascertained from the records at the county site on the date of sale and later paid by mail. With regard to the water assessment, the final decree did not order these paid by the master.
C. As to three trips to Ormond to ascertain the amount of city taxes, paving and water liens; the master, an attorney at law, appears to have been located at Daytona Beach. The property sold was real estate only. The description was short and no reason is shown why the amount of city taxes against the property could not have been ascertained and paid in one trip over, or ascertained by mail or telephone and paid by mail. The final decree did not direct the master to pay paving and water liens.
D. The trip from Camp Foster (near Jacksonville) to Daytona Beach for delivery of master's deed is not a proper item of expense. *Page 1526 
E. As regards the reports of disbursements, they appear to be short and not difficult to draw and it is quite apparent that one report of disbursements would have sufficed. The duty to prepare orders of confirmation and present the several master's reports for confirmation rested upon counsel in the case and not upon the master who made the sale.
F. No apparent necessity is shown for numerous communications with the receiver.
Where the masters are to hear witnesses, examine and consider evidence, try and determine controverted questions of fact, investigate and state complicated or controverted accounts and make report of the proceedings and results to the court, it has generally been understood and practiced that they should be allowed a reasonable compensation irrespective of schedules of fees. Claflin Co. v. Celley, 48 Vt. 3. In such cases the court should allow compensation commensurate with his ability, experience and fitness for the tasks assigned to him and commensurate with the importance and difficulty of his work and the responsibility it imposes upon him. Van Kannel Revolving Door Co. v. Uhrich, 297 Fed. 363, 370. But in such cases it is the duty of the court to see that he does not allow for more labor than has been properly performed. Chandler v. Sherman,16 Fla. 99. The tendency of the court should be to keep down these charges instead of adding to the burdensome expense of foreclosure much of which is unnecessary. Chisholm v. Hopson,182 App. Div. 856, 170 N.Y. S. 163. In all ordinary cases of no peculiar or special difficulty and involving no extraordinary labor, the master should be allowed no greater compensation than that fixed by the statute or rule of court. Henderson's Chancery Practice, page 1000. *Page 1527 
If special masters take it upon themselves to perform useless and unnecessary labor, it must be disregarded in fixing their compensation. Henderson's Chancery Practice, page 1009.
The master who made the sale and disbursed the moneys by him received as appears in this case, did not take any testimony, nor did he make any findings of fact or of law. He appears to have performed no services or labor of an extraordinary nature.
Section 4937 (3150) Compiled General Laws of Florida, 1927, furnishes a schedule of fees for masters in chancery and at the foot of the schedule adds: For making sale the same fees as are allowed sheriffs; and further adds, For all other services, the same fees as are prescribed for clerks of the circuit court (and) when no such fees are prescribed, then the master shall receive such compensation as the judge may fix.
Under the schedule of fees prescribed by statute, the master who made sale of the property, reported sale, searched for taxes and paid same, received and disbursed the money, and made report thereof with vouchers attached, was entitled to claim the following fees:
 Advertising property for sale (Sec. 4588, Comp. Gen. Laws, 1927) ............................. $ 1.00
 Drawing and executing deed (Sec. 4937, Comp. Gen. Laws, 1927) ............................ 5.00
Commission on moneys received upon sale (Sec. 4588, Comp. Gen. Laws, 1927):

 On first $100.00 ..................... 5% ......... $ 5.00
 $100.00 to $1,000.00 ................. 2% ......... 18.00
 $1,000.00 to $3,000.00 ............... 1% ......... 20.00
 Over $3,000.00 ................ 1/2 of 1% ......... 935.50

On moneys received from the receiver (amount of which is not shown by record) and paid out by *Page 1528 
the master (Sec. 4937, Comp. Gen. Laws, 1927):
On first $500.00 or fraction thereof ........ 4 1/2%
On residue, if any ....................... 3/4 of 1%
 Tax Search, (Sec. 4867, Comp. Gen. Laws, 1927) for each year's search ............. $ 0.25
 Writing reports and vouchers (Sec. 4867, Comp. Gen. Laws, 1927):
First 100 words ............................ .25
Each additional 100 words .................. 12 1/2
See Kerr v. Develin, 4 Edwards' Chancery Reports (N.Y.) 57.
The order of the court below denying the petition to modify the several allowances made for master's fees is reversed and this cause is remanded with directions to the court below to enter an order requiring the special master, Leon J. C. Harton, to pay to the complainant, to be credited on the amount decreed to be due by the final decree in this cause, or to pay into the registry of the court below, the difference between the master's compensation herein as prescribed by statute and the sum of $2,500.00 by him retained for his services herein.