Action by June E. Garlick against Robert J. Garlick, Jr., for divorce, wherein the defendant filed a cross-bill. From that part of final decree awarding plaintiff permanent alimony of $40 per week for support of herself and two minor children, the defendant appeals.
Reversed with directions.
Appellee sued appellant for divorce alleging habitual intemperance and extreme cruelty. Appellant tendered an answer and a cross-bill in which he denied the material allegations of the bill and prayed for divorce on the ground of extreme cruelty and frequent indulgence in a violent and ungovernable temper. Appellee denied the allegations of defendant's cross-bill. On final hearing appellee was awarded a divorce and the custody of their two minor children with leave of visitation on the part of the husband. The husband was required to pay the wife $40 per week for the support of herself and children. The home which was owned by them by the entireties was ordered sold and the proceeds divided equally between the husband and wife. The appeal is from that part of the final decree awarding the wife permanent alimony of $40 per week. No other question is urged for adjudication.
It appears from the record that the home was sold as per order of the Court for $11,781.72. The family automobile was shown to be worth approximately $2,500 but there were no other assets. The wife was awarded the automobile and $4,770.86 from the sale of the home. The husband was awarded $7,010.86 from the sale of the home. Neither of the parties appears to have any other assets in his own right. The defendant had a salary of $50 per week but is not shown to have had any other *Page 223 
income or source from which income may be derived.
The defendant disbursed $6,940 of the funds he received from the sale of the home for attorneys' fees, Master's fees, support money and to redeem some notes due his father for borrowed money, leaving him $70.86 in cash. From the time suit for divorce was filed, April 29, 1947, to the time the home was sold, March 4, 1938, he disbursed the additional sum of $5,753.37 for court costs, attorneys' fees, insurance, taxes, living expenses, support money, doctors bills and other expenses incident to the divorce litigation. The two disbursements included moneys borrowed and moneys that he had earned as an employee of his father. In sum, when the husband got through with his divorce litigation he was picked clean, had no assets left and his sole prospective future income was $50 per week which he was earning as a day laborer. The wife had the family automobile and the $4,770.86 in cash, awarded her from the sale of the home.
The record also discloses that the husband is afflicted with physical and personality disorders, resulting from a serious automobile accident that materially subtract from his earning capacity. Permanent alimony cannot be predicated on what the wife wants, has the capacity to spend or what she contends that her needs are. The husband's earnings, his proven assets and other sources of income are the primary basis on which to predicate alimony and when these are shown to be only $50 per week, an allowance of $40 per week to the wife is too much.
There is another matter not assigned as error that we cannot refrain from treating because it is so obviously out of harmony with justice and legal proprieties. The record in the cause was reduced from more than 700 pages to 88 pages, a splendid effort to comply with the rule, yet it shows the allowance of a Master's fee of $1,000, a reporter's fee of $700, and other court costs, including attorney's fees, all of which amounted to well over $5,000, or approximately one-half the amount received for the home.
It is inconceivable that more than $5,000 in fees and court costs be absorbed in a run of the mill divorce case like this. We can find no theory in the record to justify such an expenditure. In the administration of justice the bar is in a highly privileged position and it cannot cut the corners of the law to compromise with right without the loss of public confidence. Any such compromise that is at sixes and sevens with justice amounts to a repudiation of that which we need most to preserve. It is utterly foolish to think that a system for administering justice that liquidates or overburdens the litigant will be permitted to continue in this country.
In Rainey v. Rainey, 38 So.2d 60, decided Nov. 12, 1948, we were confronted with a question similar to this, and we there discussed the relation of the bar to the public in a democracy and pointed the line of approach to a situation like this. For the reasons stated in that opinion the fees and costs awarded in this case were exorbitant and should be materially reduced. As we said in the last cited case, the Statute, Section 62.07, Florida Statutes 1941, F.S.A., prescribes the compensation for Special Masters and reporters and the compensation so allowed should not be departed from. It may be modified or enlarged on proper showing but no such showing is apparent here.
It is by no means pleasing to call attention to oversights in procedural conduct but we would be derelict to our trust if we failed to do so. To ignore them would amount to approval of a practice that all our teachings and traditions condemn. The constitution that protects human rights and property enjoins us to do justice without "sale, denial or delay." The motto on the seal of this Court, sat cito si recte, (soon enough if correct), and the oath we subscribe to, are constant reminders of our duty to mete our justice to the high and the low alike and not permit the means employed to become an instrument of oppression.
To permit a Master's fee of $1,000, a reporters fee of $700 and court costs and attorney's fees of well over $3,000 in a *Page 224 
suit to divorce a pair in circumstances recited here, there being no controversy as to the main issues is a jolt to the judicial equilibrium that we cannot overlook. In fact, we think it is oppressive.
It follows that the cause is reversed for a review and reduction of the charges imposed, including the award of alimony in harmony with this opinion.
Reversed with directions.
THOMAS, C.J., and CHAPMAN and SEBRING, JJ., concur.