Action by Ethel Rainey against Judson Clark Rainey for divorce, wherein defendant filed a counterclaim seeking a divorce and return of $3,000 which he allegedly contributed to the marital venture. From judgment awarding defendant a divorce, requiring plaintiff to return $3,000 to defendant and pay the Special Master a fee of $1,500, the plaintiff appeals.
Affirmed in part and reversed in part.
Appellant sued appellee for divorce alleging extreme cruelty. Appellee countered with an answer and counterclaim in which he denied the material allegations of the bill and prayed to be divorced from appellant, that she be required to return $3,000 which he contributed to the marital venture and to pay him $10 per day for services rendered on her property during the time they cohabited. Testimony was taken and on final hearing the chancellor awarded defendant a divorce, required the plaintiff to return the $3,000 and pay the Special Master a fee of $1,500. All other relief was denied. This appeal is from that part of the final decree ordering return of the $3,000 and requiring the plaintiff to pay the Special Master's fee.
The record shows that the parties were well into their sixties when they embarked on the instant marital hazard. It also warrants the observation that both parties discovered America when the sign of the Zodiac was in Mars, that both were possessed of hairspring dispositions and lived together approximately a year that was punctuated with one domestic blitz after another in close succession. She denied receiving any money whatever from appellee but he testified that he took the major portion of it from a money belt he wore on his person and gave it to appellant a few days after they were married. The balance he testified was derived from the sale of his automobile. There was other evidence to support appellee's story. The chancellor concluded that appellee was entitled to return of the $3,000 and decreed accordingly. We find support for his decree.
The challenge to the fee awarded the Special Master is a delicate question to treat. In a democratic society like ours the administration of justice is not a chattel or commodity of the bar that it may traffic or barter with ad libitum. It is an attribute of sovereignty clothed with a vital public interest and we are commanded to administer it without "sale, denial or delay". Section 4, Declaration of Rights, Constitution of Florida, F.S.A. There is no such thing as justice administered in a vacuum. It concerns the adjudication of controversies by well defined standards of right and wrong in which the bar has a responsibility to society that rises equal to its duty to client. The bar is not expected *Page 61 
to serve a client gratis, at the same time no fee or charge awarded a lawyer in a litigated cause that cannot be explained and justified at the bar of an enlightened public opinion, is ever justified.
The responsibility of the bar to the public is different in kind from its duty to client. The former is intangible or spiritual but is apt to rebound with fearful consequences when ignored or neglected. We are plagued with various and sundry agencies engaged in what we choose to call unauthorized practice of the law which would not have come into the picture if we had been alert to our responsibility to the public. When the means provided for the administration of justice becomes overburdensome it is utterly foolish to think that other means will not be provided. They may not be as efficient and expeditious and we may denounce them as rank heresy but that will not stay their approval.
Every law course ought to be fortified with sufficient lessons in noblesse oblige to point the spiritual responsibility that membership in the bar imposes. It will save us jabs in the professional slats to remind us that as lawyers we are trustees of the public, clothed with a responsibility that we dare not neglect or fail in, lest we suffer the consequences. All this talk about the recession of the bar in the confidence of the public is due to lag in sensitiveness to its spiritual responsibility. Abuse of or failure in spiritual responsibility always incurs dire consequences. Jonah attempted to dodge his spiritual responsibility and we are told that he drew a free ride around the ocean in a whale's belly.
This is a run of the mill divorce suit that presents no unusual questions. In truth, the only real controversy revolved around the return of the $3,000. Both parties were clamoring for a divorce and were pleased with that phase of the final decree. The Special Master's fee in a litigated matter like this is of secondary importance to the attorney's fee. If the litigant is required to pay one-half the amount involved in the litigation for a Master's fee, an attorney's fee in proportion, and costs of courts in addition to all this, he will be required to resort to other recourses to pay for the luxury of having his name connected with a lawsuit. Such a result is contrary to every canon of noblesse oblige and will justly shower undue criticism on the administration of justice.
You cannot convince the litigant or the public in a thousand years that there is justice in such a proceeding. Any system for administering justice that tends to liquidate the litigant or to absorb the fruit of the victory in costs is a misnomer, it will discredit the means provided and precipitate a popular demand for other agencies to accomplish that purpose which may not be near so thorough and efficient. It is no answer to contend that the expense of conducting a law practice is exorbitant and must be met with commensurate charges. The answer to this contention is that any charge for legal services that tends to discredit our system of administering justice is unwarranted. It will drive the litigant to any alternative or makeshift to bypass the courts.
If democratic processes are to endure, they should be conducted in a way to inspire public confidence. The bar has a peculiar responsibility in this, and one way to discharge that responsibility is to keep the expense of litigation within reasonable bounds. Our forebears were sensitive to this and remind us constantly that the esteem of the bar is always in proportion to the manner in which we live true to our responsibility. This Court and the Supreme Court of the United States, have repeatedly held that courts have a dual responsibility in that they are not only required to interpret the law but that they should interpret it to square with democratic processes. Litigants resort to courts to get their rights adjudicated, they are not interested in a controversy that absorbs all their "rights" in court costs and attorney's fees. Democratic processes are popularized by revealing their merits rather than by jailing those who would substitute some other "ism" for them.
For the reasons stated we think the fee awarded the Special Master was exorbitant and without support in the record. *Page 62 
The case was not complicated and no extraordinary skill or means were required to negotiate the judgment. The taking of folio after folio of evidence that sometimes runs into reams is tedious but requires no special skill. The statute, Section 62.07, Florida Statutes of 1941, F.S.A., prescribes the compensation for Special Masters and ordinarily this should not be departed from. It may be modified or enlarged on a showing that the case required the expenditure of extraordinary skill or means not contemplated by the statute. We find no reason to vary from the compensation allowed by the statute in this case. The case of Marion Mortgage Co. v. Moorman, 100 Fla. 1522, 131 So. 650, amply supports the doctrine that Master's fees must follow the statute except in cases where extraordinary labor is required or peculiar difficulty is encountered in their litigation.
The judgment below as to the award of Master's fee is therefore reversed with directions to impose such a fee as directed in this opinion and decree its payment and other costs of this proceeding to be paid by appellee. In all other respects the judgment appealed from is affirmed.
Affirmed in part, reversed in part.
THOMAS, C.J., and CHAPMAN and SEBRING, JJ., concur. *Page 121