STATE, by W. V. KNOTT, JAMES M. LEE, and CARY D. LANDIS, constituting the Florida Securities Commission, v. JOHN H. MINGE, and JOHN H. MINGE, JR., trading and doing business under the firm name and style of TRADERS COMPANY.

160 So. 670.
Division A.
Opinion Filed March 26, 1935.

516

*Cary D. Landis,* Attorney General, and *H. E. Carter,* Assistant, for Appellant.

*John E. Mathews,* for Appellees.

DAVIS, J.—The appellants, State officers, have appealed from an adverse decree of the Circuit Court of Duval County in effect nullifying the provisions of Chapter 14899, Acts 1931, as amended by Chapter 16174, Acts 1933, by refusing the State, as complainant below, an injunction to permanently enjoin the defendants from engaging in the business of dealers in securities as defined by law, without first complying with the provisions of said statutes hereinabove cited, and thereupon dismissing the State's bill of complaint. The record in the case presents the following:

On October 4, 1934, the appellant filed its bill in equity in the Circuit Court in and for Duval County, Florida, seeking injunction against the appellees, and as ground therefore it is alleged that appellees are dealers in securities as defined by Subsection 4 of Section 1, Chapter 14899, Laws of Florida, Acts of 1931, and that they had for a period of time and were from day to day selling and offering for sale securities as defined by Subsection 1 of Section 1 of said Chapter 14899.

It is further alleged that appellees have failed and refused and continued to fail and refuse to file with the Florida Securities Commission the bond required of dealers in securities under Section 11 of Chapter 14899, Laws of

Florida, Acts of 1931, as amended by Chapter 16174, Acts of 1933, and that they have likewise failed and refused to deposit with the Florida Securities Commission any deposit in lieu of said bond as authorized by Section 2 of Chapter 16174, Acts of 1933. It is further alleged that appellees continue to hold themselves out as dealers in securities, and to offer for sale the said securities to the public, without complying with said Chapter 14899, Acts of 1931, as amended by Chapter 16174, Acts of 1933, and will continue to do so unless enjoined therefrom by the Court.

On October 4, 1934, the defendants filed their answer to the bill of complaint, in which was embraced a motion to dismiss.

Among other grounds of the motion to dismiss, the validity of the said Acts was brought in question as being violative of the rights guaranteed to appellees by Sections 1 and 12 of the Declaration of Rights of the State of Florida, and Section 1 of the Fourteenth Amendment to the Constitution of the United States.

On the 31st day of October, 1934, the said cause came on to be heard before the Chancellor upon application of appellant for a temporary injunction as prayed for in the bill of complaint, and upon the motion to dismiss the bill of complaint incorporated in the answer filed by appellee.

By the order of the Chancellor, it was held that the exemptions contained in said law are arbitrary and not based upon any reasonable classification, and that the same renders said law invalid as being violative of Sections 1 and 12 of the Declaration of Rights in the State of Florida, and Section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it would deprive appellees of liberty of action and property without due process of law,

and would deny to them equality before the law and equal protection of the law.

From the said decree of dismissal this appeal was taken, and the cause is now before this Court upon the record as made in the lower court.

The statutory exemptions complained of are to be found in Sections 4, 5 and portions of Section 11, of Chapter 14899, Acts of 1931, and are as follows:

"Section 4. EXEMPT SECURITIES. Except as hereinafter otherwise expressly provided, the provisions of this Act shall not apply to any of the following classes of securities:

"(a) Any security issued or guaranteed by the United States or any territory or insular possession thereof, or by the District of Columbia, or by any State of the United States or political subdivision or agency thereof.

"(b) Any security issued or guaranteed by any foreign government with which the United States is at the time of the sale or offer of sale thereof maintaining diplomatic relations, or by any state, province or political subdivision thereof having the power of taxation or assessment, which security is recognized at the time it is offered for sale in this State as a valid obligation by such foreign government or by such state, province or political subdivision thereof issuing the same.

"(c) Any security issued by and representing an interest in or a direct obligation of a national bank or issued by any Federal land bank or joint-stock land bank or national farm loan association under the provisions of the Federal Farm Loan Act of July 17, 1918, or by any corporation created and acting as an instrumentality of the Government of the United States pursuant to authority granted by the Congress of the United States.

"(d) Any security issued or guaranteed either as to principal, interest or dividend by a corporation owning or operating a railroad or any other public service utility; provided, that such corporation is subject to regulation or supervision either as to its rates and charges or as to the issue of its own securities by a public commission, board or officer of the Government of the United States, or of any State, territory or insular possession thereof, or of any municipality located therein, or of the District of Columbia, or of the Dominion of Canada or any province thereof; also equipment securities based on chattel mortgages, leases or agreements for conditional sale or cars, motive power or other rolling stock mortgaged, leased or sold to or furnished for the use of or upon such railroad or other public service utility corporation or where the ownership or title of such equipment is pledged or retained in accordance with the provisions of the laws of the United States or of any State, or of the Dominion of Canada, to secure the payment of such equipment securities; also bonds, notes or other evidences of indebtedness issued by a holding corporation and secured by collateral consisting of any securities hereinabove in this clause (d) described; provided, that the collateral securities equal in fair value at least 125 per centum of the par value of the bonds, notes or other evidence of indebtedness so secured.

"(e) Any security issued by a corporation organized exclusively for religious, educational, benevolent, fraternal, charitable or reformatory purposes, and not for pecuniary profit, and no part of the net earnings of which inures to the benefit of any private stockholder or individual.

"(f) Securities appearing in any list of securities dealt in on the Stock Exchange of New York, Boston, Chicago, or any other city of the United States of more than one

million inhabitants, the Board of Trade of the City of Chicago or the New York Curb Exchange, and which securities have been so listed pursuant to official authorization by such exchange, and also all securities senior to any securities so listed, or represented by subscription rights which have been so listed, or evidences of indebtedness guaranteed by companies any stock of which is so listed, such securities to be exempt only so long as such listings shall remain in effect. The Commission shall have power to deny this exemption with reference to any particular security listed on any of such exchanges, by order published in such manner as the Commission shall find proper.

"(g) Securities appearing in any list of securities dealt in on any other recognized and responsible stock exchange which has been previously approved by the Commission, and which securities have been so listed pursuant to official authorization by such exchange, and also all securities senior to any securities so listed, or represented by subscription rights which have been so listed, or evidences of indebtedness guaranteed by companies any stock of which is so listed, such securities to be exempt only so long as such listing shall remain in effect. The Commission shall have power at any time to withdraw approval theretofore granted by it to any exchange, and upon such withdrawal no security listed on such exchange shall be longer entitled to the benefit of such exemption. The Commission shall also have power to deny this exemption with reference to any particular security listed on any such exchanges, by order published in such manner as the Commission shall find proper.

"(h) Any security issued by and representing an interest in or direct obligation of any State bank, trust company or savings institution incorporated under the laws of and

subject to the examination, supervision, and control of this State; or by any insurance company under the supervision of the officials of this State; or issued by any building and loan association of this State under like supervision.

"(i) Negotiable promissory notes or commercial paper; provided, that such issue of notes or commercial paper matures in not more than twelve months from date of issue and shall be issued within three months after the date of sale.

"(j) Any security, other than common stock, providing for a fixed return, which has been outstanding and in the hands of the public for a period of not less than five years, upon which no default in payment of principal or failure to pay the return fixed, has occurred for a continuous immediately preceding period of five years.

"Section 5. EXEMPT TRANSACTIONS. Except as hereinafter expressly provided, the provisions of this Act shall not apply to the sale of any security in any of the following transactions:

"(a) At any judicial, executor's, administrator's, guardian's or conservator's sale, or at any sale by a receiver or trustee in insolvency or bankruptcy.

"(b) By or for the account of a pledge holder or mortgagee selling or offering for sale or delivery in the ordinary course of business and not for the purpose of avoiding the provisions of this Act, to liquidate a *bona fide* debt, a security pledged in good faith as security for such debt.

"(c) An isolated transaction in which any security is sold, offered for sale, subscription or delivery by the owner thereof, or by his representative for the owner's account, such sale or offer for sale, subscription or delivery not being made in the course of repeated and successive transactions of a like character by such owner, or on his account

by such representative, and such owner or representative not being the underwriter of such security.

"(d) The distribution by a corporation, actively engaged in the business authorized by its charter, of securities to its stockholders or other securities holders as a stock dividend or other distribution out of earnings or surplus; or the issuance of securities to the security holders or other creditors of a corporation in the process of a *bona fide* reorganization of such corporation made in good faith and not for the purpose of avoiding the provisions of this Act, either in exchange for the securities of such security holders or claims of such creditors or partly for cash and partly in exchange for the securities or claims of such security holders or creditors; or the issuance of additional capital stock of a corporation sold or distributed by it among its own stockholders exclusively, where no commission or other remuneration is paid or given directly or indirectly in connection with the sale or distribution of such increased capital stock.

"(e) The sale, transfer or delivery of any securities to any bank, savings institution, trust company, insurance company or to any corporation or to any broker or dealer; provided, that such broker or dealer is actually engaged in buying and selling securities as a business.

"(f) The transfer or exchange by one corporation to another corporation of their own securities in connection with a consolidation or merger of such corporations.

"(g) Bonds or notes secured by mortgage upon real estate or tangible personal property where the entire mortgage together with all of the bonds or notes secured thereby are sold to a single purchaser at a single sale.

"(h) The issue and delivery of any security in exchange for any other security of the same issue pursuant to a

right of conversion entitling the holder of the security surrendered in exchange to make such conversion, provided that the security so surrendered has been registered under the law or was, when sold, exempt from the provisions of the law and that the security issued and delivered in exchange if sold at the conversion price, would at the time of such conversion fall within the class of securities entitled to registration by notification under the law. Upon such conversion the par value of the security surrendered in such exchange shall be deemed the price at which the securities issued and delivered in such exchange are sold.

"(i) Subscriptions for shares of the capital stock of a corporation prior to the incorporation thereof under the laws of this State, when no expense is incurred, or no commission, compensation or remuneration is paid or given for or in connection with the sale or disposition of such securities.

"(j) The sale or distribution of securities of any public utility corporation operating in this State, or the securities of any public utility controlling such first mentioned public utility which is subject to regulation by the public service commission of any State or by the Interstate Commerce Commission or by any other similar State or Federal regulatory body, when such securities are 'exempt securities' under Section 4 of this Act and such sale or distribution is made by the corporation issuing such securities, or any subsidiary thereof, through the employees of the public utility so operating in this State." * * *

"Section 11. REGISTRATION OF DEALERS AND SALESMEN. No dealer or salesman shall engage in business in this State as such dealer or salesman, or sell any securities including securities exempted in Section 4 of this Act, except in transactions exempt under Section 5 of this Act,

unless he has been registered as a dealer or salesman in the office of the Commission pursuant to the provisions of this section; provided, however, that corporations, and their subsidiaries acting in their behalf, and the employees of such corporation or subsidiary, shall not be held to be 'dealers' or 'salesmen' or required to register as such as to or for the sale by such employees or securities are 'exempt securities' under Section 4 of this Act; provided that nothing in this Act shall require the registration with the Florida Securities Commission of insurance agents who are licensed and supervised by the Insurance Commissioner." * * *

The bill alleges that the appellees are dealers in securities as defined by Subsection 4 of Section 1 of Chapter 14899, *supra,* to whom the bond requirements of Section 11 of the Act applies and that appellees have failed to comply with such requirements. Unless, therefore, the Act is unconstitutional and void as complained of by appellees, the State's bill of complaint should have been sustained and the injunction prayed for granted, pursuant to Section 15 of said Chapter 14899, which section provides for the issuance of injunctions at the instance of the State to restrain violations of the Act in the particular complained of in the State's bill of complaint which was dismissed in the court below.

The bond requirement of the law has been heretofore sustained by this Court as being valid *per se.* State, *ex rel.* Municipal Bond & Investment Co. v. Knott, 114 Fla. 120, 154 Sou. Rep. 143. See also: State v. Atlantic Title Co., 118 Fla. 402, 158 Sou. Rep. 888. So the proposition to be decided in this case is the validity of the classifications made in the regulatory statute for the purpose of removing from the scope of the Act's operation those securities, and

dealers in same, which the statute expressly undertakes to exclude.

The Fourteenth Amendment to the United States Constitution does not prohibit regulatory legislation special in character. Neither does the 12th Section of the Bill of Rights in the State Constitution have that effect.

The Legislature may single out and undertake to regulate a limited group which it deems a conspicuous example of a larger classification that might be regulated in its entirety in order to abate evil practices, although logically the narrow class regulated may seem not to be distinguishable from other special groups not comprehended within the law. The equal protection clause of the Federal Constitution does not require the State statutes shall cover the entire field of proper legislation in a single enactment. The fact that an Act of the Legislature might well have extended to other classes of persons, or to the entire permissible field of legislative activity in the premises, does not give rise to a constitutional objection on that score alone. Central Lbr. Co. v. State of South Dakota, 226 U. S. 157, 33 Sup. Ct. Rep. 66, 57 L. Ed. 164; Raymann Brewing Co. v. Brister, 179 U. S. 445, 21 Sup. Ct. Rep. 201, 46 L. Ed. 269; Patsone v. Commonwealth of Pennsylvania, 232, U. S. 138, 34 Sup. Ct. Rep. 281, 58 L. Ed. 539; Keokee Consol. Coke Co. v. Taylor, 234 U. S. 224, 34 Sup. Ct. Rep. 856, 58 L. Ed. 1288; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. Rep. 337, 55 L. Ed. 369; Finley v. People of State of California, 222 U. S. 28, 32 Sup. Ct. Rep. 13, 56 L. Ed. 75; Armour & Co. v. State of North Dakota, 240 U. S. 510, 36 Sup. Ct. Rep. 440, 60 L. Ed. 771; Dominion Hotel v. State of Arizona, 249 U. S. 265, 39 Sup. Ct. 273, 63 L. Ed. 597; Griffith v. State of Connecticut, 218 U. S. 563, 31 Sup. Ct. Rep. 17, 54 L. Ed. 1151;

Board of Education of Kentucky v. State of Illinois, 203 U. S. 553, 27 Sup. Ct. Rep. 171, 51 L. Ed. 314, 8 Ann. Cas. 157; People of State of New York v. Roberts, 171 U. S. 658, 19 Sup. Ct. Rep. 58, 51 L. Ed. 314, 8 Ann. Cas. 157; People of State of New York v. Roberts, 171 U. S. 658, 19 Sup. Ct. Rep. 58, 43 L. Ed. 323; Citizens' Telephone Co. of Grand Rapids v. Fuller, 229 U. S. 322, 33 Sup. Ct. Rep. 833, 57 L. Ed. 1206; Rast v. Van Deman & Lewis Co., 240 U. S. 342, 36 Sup. Ct. Rep. 370, 60 L. Ed. 679, L. R. A. 1917-A 421; Erb v. Morasch, 177 U. S. 584, 20 Sup. Ct. Rep. 819, 44 L. Ed. 897.

When the first division of the exemption in Section 11 of Chapter 14899 is read in connection with Subsection (j) of Section 5 of the Act, it plainly appears that the exemption only applies when the securities dealt in are "exempt securities" under Section 4 of the Act by reason of their being otherwise regulated. The same thing is also applicable to the second exemption which relates to insurance agents otherwise regulated by a separate State law, and only when such insurance agents acting as representatives of the insurance companies they represent undertake to sell or offer for sale securities otherwise subject to the Act.

The purpose of statutes like Chapters 14899 and 16174, *supra,* is to protect investors in securities not from financial loss generally, but from fraud. In the prevention of fraud, the regulatory power of the State Legislature is not necessarily confined to those classes of businesses which by their nature or as generally calculated involve or encourage fraud; such power may extend to those in which fraud usually when it arises, is occasional and is confined to individual transactions, but which may nevertheless be conducted for fraudulent purposes. The limitations of the

Constitution are not so rigid as to render State legislation inadequate to the changing conditions of life.

That the State has ample legislative power to assume even a paternalistic role in this respect for the protection of buyers of stocks and securities offered for sale by persons, firms and corporations who undertake to engage in the business of selling same, whether as absolute owners or as agents or brokers for others, cannot be denied in view · of the most recent utterances of the Supreme Court of the United States on the subject in "The Blue Sky Cases" decided in 1917, which cases were ruled on subsequent to Bracey v. Darst, 218 Fed. 482 (decided in 1914), relied upon by appellees in support of their contention that the State's power is of decidedly more limited character. See: Hall v. Geiger-Jones Co., 242 U. S. 539, 37 Sup. Ct. Rep. 217, 51 L. Ed. 480; Merrick v. N. W. Halsey & Co., 242 U. S. 568, 37 Sup. Ct. Rep. 227, 61 L. Ed. 498; Caldwell v. Sioux Falls Stock Yards Co., 242 U. S. 559, 37 Sup. Ct. Rep. 224, 61 L. Ed. 493. Compare: Hutchinson Ice Cream Co. v. State of Iowa, 242 U. S. 153, 37 Sup. Ct. Rep. 28, 61 L. Ed. 217, Ann. Cas. 1917-B 643.

The decisions of the Federal Supreme Court above cited sustain the proposition that there is nothing in the equal protection clause of the Fourteenth Amendment which does not leave the Legislature at liberty to regulate those particular activities of selling and offering for sale stocks, bonds and other securities which it may deem conspicuous sources of existing evils, without embracing others which, but for this distinction, would fall in the same class. The effect of the Supreme Court "Blue Sky Law" cases hereinbefore cited is to overrule in large part the more conservative view of the law expressed by the Three Judge U. S. District Court of West Virginia in Bracey v. Darst, *supra,*

upon which decision appellee in this case places his main reliance for support of the position that the decree appealed from in this case should be affirmed.

We hold that the asserted discriminations as herein construed to operate are within the constitutional power which the Legislature has to direct its laws against what it deems an evil as it actually exists without covering the whole field of possible abuses, and that upon such postulate the provisions of Chapter 14899, Acts 1931, as amended by Chapter 16174, Acts 1933, should be held valid and enforced as in said Acts provided, the assertions of invalidity made by appellees to the contrary notwithstanding. See Metropolis Casualty Insurance Company of New York v. Brownlee, U. S. Sup. Ct. March 18, 1935.

Reversed.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.