[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 352 
Suit by the Florida Power Corporation against the Pinellas Utility Board and others, challenging the validity of statute creating the named defendant. From a decree dismissing the bill of complaint, the plaintiff appeals.
Affirmed.
Chapter 24815, Special Acts of 1947, Laws of Florida, created the Pinellas Utility Board; prescribed the powers and duties thereof; provided for the regulation and sale of electricity in Pinellas County; fixed the method of naming the members of the Pinellas Utility Board; authorized it to employ an attorney, rate expert and engineers; required all utilities then operating in Pinellas County to furnish the Utility Board with reports and other information; conferred powers and duties on said Board; granted the power to prescribe the procedure for investigation of rates; power and authority after notice and hearing to fix the rates for the sale by all utilities in Pinellas County of electricity; made certain defined acts of agents of utilities misdemeanors; made it unlawful to charge excessive rates for electricity or to discriminate in rates as between users there or grant rebates to its customers in Pinellas County.
The Pinellas Utility Board was granted the power to inspect books, records and accounts of utilities doing business in Pinellas County; examine under oath agents, officers and employees of utilities and required it to keep proper written minutes; provided for the payment of salaries and expenses of the members of the Utility Board; granted the Board full power to act within the authority conferred by Chapter 24815; authorized the Board to promulgate just and reasonable rates, tolls and charges to be paid by the users of *Page 353 
electricity and made it unlawful for any utility to charge a higher rate therefor than fixed by the Pinellas Utility Board; granted the Board the power to prescribe rules and regulations affecting the sale of electricity within Pinellas County; the Act fixed the method of determining the investment of any utility and limiting the return on the investment; the duties of the Board of County Commissioners of Pinellas County with reference to the terms and provisions of the Act are set out and defined.
The Florida Power Corporation under its charter is authorized to engage in the electric utility business. It now operates in Pinellas County and 27 other counties of Florida and has established in the area uniform rates, an accounting system, standard equipment, method of repair, rules for employees, and now supplies electric current to its customers within the territory. It maintains generating plants at St. Petersburg, Inglis, Enterprise, and Avon Park. This Act affects about one-half of all the customers of the Florida Power Corporation in the 28 counties serviced by it. Pinellas County supplies about one-half of the gross revenue for the whole system but the total revenue from all classes of consumers situated in Pinellas County is approximately one-third of the total amount received from the whole system.
On December 18, 1947, the Florida Power Corporation filed in the Circuit Court of Pinellas County, Florida, its bill of complaint challenging the constitutionality of Chapter 24815, supra, on various grounds. A motion to dismiss the bill of complaint was filed and heard in the court below and after argument an order was entered denying the motion to dismiss and required an answer by the defendants. The original bill was amended and the cause was submitted to the Chancellor below on bill and answer and an agreed statement of facts signed by counsel of record when a final decree was entered finding the equities of the cause with the defendants and the bill of complaint was dismissed. The plaintiff appealed. Counsel for appellant assign here thirteen grounds or reasons for a reversal of the final decree or, stated differently, Chapter 24815, supra, is unconstitutional according to counsel's contention because of one or more of these thirteen reasons.
The first question posed here by counsel for appellant is viz; Is Chapter 24815, Laws of Florida, 1947, and are the subject matter and purpose thereof, violative of the intendment and inhibitions of Section 5 of Article 9 of the Constitution of Florida, F.S.A., in unlawfully providing for expenditure, in and by Pinellas County, Florida, of county tax money for an object which is not a proper county purpose?
Special Chapter 24815, supra, authorizes the Board of County Commissioners of Pinellas County to pay costs and expenses incurred by the Pinellas Utility Board in carrying out the terms, conditions and provisions of the Act from funds raised by taxation in Pinellas County under its control. The County Commissioners approved the expenditure of the sum of $5,000.00 to cover costs and expenses of the Pinellas Utility Board functioning under the Act for the period prior to October 1, 1947. The further sum of $40,000.00 was budgeted and approved by the Board of County Commissioners to be used by the Pinellas Utility Board for the fiscal year ending September 30, 1948. It is conceded here that the Legislature of Florida, under Section 8 of Article 8 of the Florida Constitution, has the power to delegate to a municipality the power to correct abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged in performing service of a public nature. Likewise the Legislature may confer such power upon a state agency similar to the Florida Railroad and Public Utilities Commission, but it does not have the power to confer on a political unit, like Pinellas County, it is contended, the authority and power to regulate rates or charges for electricity and expending the taxpayers' money incident thereto, as provided for by Special Chapter 24815, as such expenditures are not a county purpose.
In the case of Miami Bridge Co. v. Miami Beach Ry. Co.,152 Fla. 458, at page 473, 12 So.2d 438, 445, we in part *Page 354 
said: "* * * It has long since been found necessary that some public control over the rates of public utilities should be established in order to fix charges and reasonable rates of compensation for the services rendered by such utilities. This power of regulation can be exercised either directly by the legislature or through the instrumentality of boards and commissions created by the legislature or created by organic law. The Florida Constitution of 1885 provides, Art. XVI, Section 30, that: `The Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures.'" Likewise, in the case of Miami Bridge Co. v. State R.R. Commission, 155 Fla. 366, 20 So.2d 356, 362, we in part said: "* * * the power to make reasonable rates may be exercised directly by the Legislature or by some instrumentality of its own selection and the reasonableness of the rate as fixed by this instrumentality can or may by the courts be reviewed or inquired into when presented in an appropriate proceeding. See Miami Bridge Co. v. Miami Beach Ry. Co., supra; Day v. City of St. Augustine, 104 Fla. 261, 139 So. 880; Florida Motor Lines, Inc., v. Railroad Commissioners, 100 Fla. 538, 129 So. 876; State ex rel. Young v. Duval County, 76 Fla. 180, 79 So. 692."
Section 5 of Article 9 of the Florida Constitution provides that the Legislature shall authorize the several counties and cities of Florida to assess and impose taxes for county and municipal purposes, and for no other purposes, and all property shall be taxed upon the principles established for state taxation. It is to be observed that this Section does not define "county purposes" for which a county may be authorized by an Act of the Legislature to levy taxes. What is a county purpose may be determined by the express or implied provisions of a statute and usually the courts will not interfere with such determination as expressed or implied by the Legislature, unless such statute has no legal or practical relation to a valid county purpose. State v. Brevard County, 99 Fla. 226, 126 So. 353. County purposes may be determined by the Legislature. Jordan v. Duval County, 68 Fla. 48, 66 So. 298. We have no general rule for determining what is a county purpose. State ex rel. Garrison v. Comm'rs. of Putnam County, 23 Fla. 632, 3 So. 164.
Legislative determination of what constitutes a county purpose, for which a county may assess taxes, cannot be rendered ineffectual by the courts unless violative of constitutional provisions or having no legal or practical relation to any county purposes. Thursby v. Stewart, 103 Fla. 990, 138 So. 742. We held money spent on an air base and flying field raised by taxation was a county purpose. State ex rel. Gibbs v. Gordon, 138 Fla. 312, 189 So. 437. The taxpayers' money spent for buildings to house agricultural fairs was held a county purpose. Earle v. Dade County, 92 Fla. 432, 109 So. 331. Hospitals may be constructed with the taxpayers' money. State v. Walton County, 97 Fla. 59,119 So. 865. See Brown v. Winton, 143 Fla. 478, 197 So. 543. The legislative purpose of Chapter 24815 was to prevent excessive rates or charges for electric current to the residents of Pinellas County. The money raised by taxation and expended by the Board of County Commissioners of Pinellas County, as reflected by the record, was clearly made a county purpose by the terms and provisions of Chapter 24815. A taxpayer of Pinellas County, let us assume, may be willing to pay the additional costs taxed against his property and simultaneously obtain in return a fair and just charge or toll for electrical current. The Legislature has the power, subject to judicial review, to determine what is a county purpose and it cannot be said on this record that the legislative determination here challenged is in conflict with the meaning of the provisions of Section 5 of Article 9 of the Constitution.
The second question propounded by counsel for appellant is viz.: Even if it could, upon any theory, be held that *Page 355 
Chapter 24815, Laws of Florida, 1947, provides an object construable as a permissive county purpose, then is not the enactment equally invalid as mandatorily, rather than permissively, imposing upon Pinellas County the tax expense of an object which is primarily (or even mutually) a state function and purpose?
The record in this case fails to reflect a complaining taxpayer of Pinellas County other than the appellant. The terms and provisions of Chapter 24815 point to the conclusion that the Legislature intended that funds of the county raised by taxation should be expended as operating expenses in an effort to obtain just and reasonable tolls and charges for electric current and therefore the expenditures were for a county purpose. It may be said that each generation should possess the right to construe or interpret our Constitution in the light of his daily needs in a complex society rather than in the light of now obsolete conditions and circumstances of the past. It is unjust to chain modern society to the views and opinions of eminent jurists of former generations not acquainted with our present day problems. It is now common knowledge that electricity is a daily necessity in each home, similar to food, water, heat, light, freezing units and other modern conveniences. Section 30 of Article 16 of the Constitution provides: "The Legislature is invested with fullpower to pass laws for the correction of abuses," etc. (Emphasis supplied) It may be assumed that expenditures of public funds are necessary to correct "abuses and to prevent unjust discrimination and excessive charges". It was a prerogative of the Legislature to prescribe by an appropriate enactment the manner and means of meeting these demands in behalf of the public interest. Even if the agency is construed to be a State agency, it is serving a county purpose. Many State agencies may serve a local purpose as well as a State purpose.
Appellant's third question is, viz.: Does Chapter 24815, Special Acts of Florida, 1947, create an unreasonable and discriminatory classification that operates as a denial of equal protection of the laws to the plaintiff in violation of the Federal and Florida Constitutions?
Chapter 10497, Special Acts of 1925, Laws of Florida, granted franchise rights to Bay Biscayne Improvement Company to charge and collect tolls for the privilege of passing over the Venetian Causeway spanning Biscayne Bay between the City of Miami and Miami Beach for a certain period of time. The Legislature of Florida, in Section 5 of the Act, prescribed the charges and tolls legally collectible for passage over the Venetian Causeway. The Act was applicable only to Dade County, Florida, for the use and benefit of the public. The tolls and charges set out in Section 5, as prescribed by the Legislature, were authorized by Section 30 of Article 16 of the Florida Constitution. In the case of Miami Bridge Co. v. Miami Beach Ry. Co., supra [152 Fla. 458, 12 So.2d 445], we held that "this power of regulation can be exercised" (1) directly by the Legislature; (2) through some instrumentality of the Legislature; (3) by a board; (4) or by a commission created or established for the purpose; or the Legislature had the power to confer this jurisdiction on the courts or some other existing boards, bureaus or functionaries. Section 30 of Article 16 supra grants the Legislature full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges. Florida is a sovereign State and possesses the constitutional power to regulate the rates to be charged by a public utility for its products or services. City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 So. 631, (affirmed Tampa Waterworks Co. v. City of Tampa, 199 U.S. 241, 26 S.Ct. 23, 50 L.Ed. 170); State ex rel. Ellis v. Atlantic Coast Line R.R. Co., 51 Fla. 578, 40 So. 875; Tampa Water Works Co. v. City of Tampa, 47 Fla. 338, 36 So. 174, affirmed 199 U.S. 241, 26 S.Ct. 23, 50 L.Ed. 170; Gainesville Gas Electric Power Co. v. Gainesville, 63 Fla. 425, 58 So. 785; State ex rel. Triay v. Burr, 79 Fla. 290, 84 So. 61, and many other cases.
It is conceded that the Florida Power Corporation has a charter right *Page 356 
from the State to sell current and collect therefor in Pinellas and several other counties of Florida. Can it be said that such rights cannot be regulated in behalf of the public interest after granting the franchise? The appellant must admit that when it accepted its charter it did so with a full knowledge of all applicable statutes and constitutional provisions, inclusive of the power to regulate. In the case of Miami Bridge Co. v. State R.R. Commission, 155 Fla. 366, at page 376, 20 So.2d 356, 361, we in part said:
"It is established law that the inhibitions of the Constitution of the United States upon the impairment of the obligations of contracts, or the deprivation of property without due process, or the equal protection of the law by the States are not violated by the legitimate exercise of legislative power in securing the health, safety, morals and general welfare. The governmental powers cannot be contracted away, nor can the exercise of rights granted, nor the use of the property, be withdrawn from the implied liability to governmental regulations. The right to exercise the police power is a continuing one. The franchise granted by Chapter 10497, supra, was accepted with the full knowledge of the existence of the police power which authorizes regulations in behalf of the public. See Phillips Petroleum Co. v. Jenkins, 297 U.S. 629, 56 S.Ct. 611, 80 L.Ed. 943; Chicago, Burlington Q.R.R. Co. v. Nebraska, 170 U.S. 57, 18 S.Ct. 513, 42 L.Ed. 948; Home Building Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481; Northern Pacific Ry. Co. v. Minnesota, 208 U.S. 583, 28 S.Ct. 341, 52 L.Ed. 630."
Petition for writ of certiorari denied by the United States Supreme Court. See 325 U.S. 867, 65 S.Ct. 1405, 89 L.Ed. 1987.
A considerable part of the argument of counsel presented here under question three was before the Circuit Court of Appeals in Florida Power Light Co. v. City of Miami, 5 Cir., 98 F.2d 180. Petition for writ of certiorari from the judgment was denied by the United States Supreme Court. See 305 U.S. 644, 59 S.Ct. 147, 83 L.Ed. 415.
It is further contended that Chapter 24815 violates the State and Federal Constitutions in that the geographical arrangement (meaning Pinellas County) created an arbitrary classification in that the Legislature selected the appellant and others similarly situated for the imposition of burdens and penalties not otherwise imposed by the State on other electric utilities of Florida likewise engaged in other counties. The case of Seaboard Air Line Ry. Co. v. Simon, 56 Fla. 545, 47 So. 1001, 20 L.R.A., N.S., 126, 16 Ann.Cas. 1234, is cited to sustain the contention on the theory that the Act under consideration violates guarantees of due process of law and the equal protection of the law. The answer to the contention is Section 30 of Article 16 of our Constitution. This Section of our Constitution was not before the Court nor considered in Seaboard Air Line Ry. Co. v. Simon, supra.
Counsel overlooks our ruling in State ex rel. Knott v. Minge,119 Fla. 515, 160 So. 670, in contending that Chapter 24815 denies the appellant due process and equal protection of the law. We said, 119 Fla. 526, 160 So. at page 674:
"The Fourteenth Amendment to the United States Constitution does not prohibit regulatory legislation special in character. Neither does the twelfth section of the Bill of Rights in the State Constitution have that effect. "The Legislature may single out and undertake to regulate a limited group which it deems a conspicuous example of a larger classification that might be regulated in its entirety in order to abate evil practices, although logically the narrow class regulated may seem not to be distinguishable from other special groups not comprehended within the law. The equal protection clause of the Federal Constitution does not require the state statutes shall cover the entire field of proper legislation in a single enactment. The fact that an act of the Legislature might well have extended to other classes of persons, or to the entire permissible field of legislative activity in the premises; does not give rise to a constitutional objection on that score alone", and cases cited. *Page 357 
Appellant's fourth question is, viz.: Must an Act of the Legislature which authorizes a utility board to prescribe rules and regulations affecting the service had in connection with the sale of electricity in Pinellas County and providing that the violation of any of the rules and regulations so promulgated shall constitute a misdemeanor and shall be punishable as such, also provide for a notice to all interested parties and the public of a hearing, and must a hearing be had before such rules and regulations are promulgated?
It will be observed that Section 12 of Chapter 24815 authorizes the Pinellas Utility Board to prescribe rules and regulations affecting the service and sale of electricity in Pinellas County and that such rules as promulgated shall be published for four weeks in a newspaper published in Pinellas County. Section 14 makes it a misdemeanor and punishable as such for the violation of the rules so promulgated. The answer to the contention is that it is premature because the Utility Board, as shown by the record, has not (a) promulgated a rule of regulation; (b) has not published the same in a newspaper published in Pinellas County; (c) the reasonableness of such rules or regulations cannot be considered or ruled upon until acted on by the Pinellas Utility Board. We have no person here claiming that his constitutional rights have been violated by the enforcement of Sections 12 and 14 of Chapter 24815. See Miami Laundry Co. v. Florida Dry Cleaning Laundry Board, 134 Fla. 1, 183 So. 759, 119 A.L.R. 956.
Appellant's fifth question is, viz.: Does Section 16 of Chapter 24815, Laws of Florida, 1947, violate Section 16, Article III of the Florida Constitution in that said Section of the Act requires that any utility, as prerequisite to the bringing of any suit in the courts of the state to enjoin or otherwise alter rates promulgated by the Pinellas Utility Board, must furnish a bond as described in said Section of said Act, whereas the title to said Act nowhere mentions or suggests that such a bond will be required or that a utility will not be permitted to come into the courts of this State on the same footing as other litigants?
The applicable rule is, if the title to an Act fairly gives notice of the subject of the Act so as to reasonably lead to an inquiry into the body of the Act, it is all that is required. The title need not attempt to index the contents of the Act. Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771. This is a matter to be met when the point becomes material. It is presently moot.
Appellant's eighth question is, viz.: Are the members of the Pinellas Utility Board State or County officers within the meaning of Section 27, Article 3 of the Constitution of Florida, so that any vacancies thereon must be filled by appointment of the Governor or election by the people?
Section 1 of Chapter 24815 provides that in the event of a vacancy on the Pinellas Utility Board such vacancy shall be filled by the remaining Commissioners until the next regular State and County election and the person so elected by the voters of Pinellas County shall serve out the term in which the vacancy occurred. It is admitted on the record that a vacancy does not now exist on the Pinellas Utility Board and the members now serving on the Board were appointed by Governor Caldwell, as provided in Section 1. It is unnecessary to pass upon the contention as it is prematurely presented.
Appellant's ninth question is, viz.: Where the Legislature delegates to an administrative board the power to fix rates of all utilities within a single county so that such rates shall be fair and reasonable, and give the utility affected a return on its real and legitimate investment in the county of at least 6% on said investment, has the Legislature established with certainty a reasonable standard for the formulation of rates by the Board?
The Legislature has the power by statute to delegate to a board, commission or other functionaries the power to adopt reasonable rules and regulations of a business or trade in behalf of the public interest. The rules as promulgated are subject to review by the courts. Miami *Page 358 
Laundry Co. v. Florida Dry Cleaning Laundry Board, 134 Fla. 1,183 So. 759, 119 A.L.R. 956; Cooper v. Tampa Electric Co.,154 Fla. 410, 17 So.2d 785.
Appellant's thirteenth question is, viz.: Where a special act of the Legislature of Florida alters, amends or repeals part of twelve municipal charters, but neither the title to the Act nor the notice of intention to introduce the proposed legislation refers to such alteration or repeal in any way, is Section 21 of Article 3 of the Constitution violated?
Situated in Pinellas County were several municipalities prior to the enactment of Chapter 24815 by the 1947 session of the Legislature. Each of these municipalities possess the charter power of regulating rates and charges by utilities for the sale of electricity, gas and other products therein. Section 17, supra, provides that the power and authority conferred is declared to be specific so far as the control of rates, charges and tolls of utilities in Pinellas County is concerned, and all laws and acts in conflict are repealed. This clause is not to be interpreted to repeal any of the present laws of the State of Florida affecting crimes pertaining to the improper use or improper securing of electricity by persons, firms or corporations. It is contended that Chapter 24815 was not enacted pursuant to notice given as the notice given did not refer to the repeal of the various charters of the municipalities of Pinellas County in violation of Section 21 of Article 3 of the Florida Constitution.
As the writer interprets the order appealed, the Chancellor did not rule on the contention upon the theory that (1) the several cities of the county were not parties to the suit; (2) the said cities affected are each entitled to an adversary hearing prior to such a ruling.
Since the Chancellor below failed to pass upon the contention, we are not in a position to rule here since it must be presumed that a court in its ruling will follow the law. We have given careful consideration to the several questions raised on this appeal and it is our conclusion that reversible error has not been made to appear.
Affirmed.
ADAMS, C.J., BARNS, J., and BROWN and TEDDER, Associate Justices, concur.
TERRELL and THOMAS, JJ., dissent.