Mr. Patrick E. Geraghty Attorney for the Fort Myers Community Redevelopment Agency Post Office Box 1605 Fort Myers, Florida 33902-1605
Dear Mr. Geraghty:
You have asked for my opinion on substantially the following questions:
1. Is the City of Fort Myers authorized to make interest free loans to the Community Redevelopment Agency for the City of Fort Myers?
2. Does section 163.387(2)(a), Florida Statutes, establish a minimum time frame for retiring the debt of a community redevelopment district or can such debt be retired at any time during the life of the district?
3. Is there a minimum amount of debt at which increment revenues need no longer be pledged under Part III, Chapter 163, Florida Statutes, for repayment?
In sum:
1. Section 163.400, Florida Statutes, authorizes the City of Fort Myers to make interest-free loans of properly appropriated municipal funds to the Community Redevelopment Agency for the City of Fort Myers for projects declared by the city to represent a municipal purpose.
2. Part III, Chapter 163, Florida Statutes, establishes a framework for the repayment of bonds, notes and other obligations incurred for purposes of community redevelopment depending on the type of obligation issued, the funds used for repayment, and any refunding or renewal of these obligations.
3. There is no minimum amount of debt at which increment revenues need no longer be pledged pursuant to section 163.387, Florida Statutes. Rather, increment revenues must be pledged according to the statutory formula so long as any indebtedness pledging those revenues is outstanding (not to exceed 30 years).
Question One
Initially, I would note that while it is the policy of this office not to comment on the duties and responsibilities of one governmental agency (in this case the City of Fort Myers) at the request of another agency (the Community Redevelopment Agency for the City of Fort Myers), in this case the City Commission of Fort Myers has been appointed to serve as the governing body of the community redevelopment district. Thus, a request from the City of Fort Myers Community Redevelopment District is a request from the city commission and may be addressed by this office.
The Florida Constitution, in Article VII, section 10, prohibits the state or a county, municipality, special district, or any agency thereof from lending or using its taxing power or credit to aid any private corporation, association, partnership or person. The purpose of this provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefited."[1] Thus, the applicability of the prohibitions contained in the Constitution are dependent in part on whether a valid public purpose is involved. The determination of what constitutes a valid public purpose for the expenditure of public funds is, at least initially, a determination for the legislative body of the governmental entity.[2] A legislative declaration of public purpose is presumed to be valid and should be deemed correct unless so clearly erroneous as to be beyond the power of the legislative body.[3]
Part III, Chapter 163, Florida Statutes, the "Community Redevelopment Act of 1969," represents the state's response to the threat to the public health, safety, morals, and welfare from the development or spread of slums and urban blight.[4] The act encourages community redevelopment and provides for the redevelopment of slums and blighted areas.[5] Part III of Chapter 163, Florida Statutes, provides for the creation of community redevelopment agencies;[6] the powers to be exercised by local governmental agencies under the act;[7] the issuance of revenue bonds by governmental entities to finance community redevelopment;[8]
and certain activities and areas of cooperation by public bodies for aiding in the planning, undertaking, or carrying out of community redevelopment and related activities.[9]
With respect to community redevelopment pursuant to Part III, Chapter 163, Florida Statutes, the Legislature has determined such activity to be a proper subject for the expenditure of public funds.[10] If the purpose to be achieved constitutes a valid public purpose, then the means to be applied to obtain such a purpose are largely within the discretion of the Legislature.[11]
Section 163.400(1)(e), Florida Statutes, authorizes municipalities[12]
to:
"Enter into agreements, which may extend over any period, notwithstanding any provision or rule of law to the contrary, with the Federal Government, a county, a municipality, or another public body respecting action to be taken pursuant to any of the powers granted by this part, including the furnishing of funds or other assistance in connection with community redevelopment and related activities."
Thus, the loan of municipal funds for community redevelopment activities is clearly authorized by Part III, Chapter 163, Florida Statutes.
Further, subsection (3) of 163.400, Florida Statutes, authorizes a municipality to furnish such assistance "with or without consideration":
"For the purpose of aiding in the planning, undertaking, or carrying out of any community redevelopment and related activities of a community redevelopment agency . . . hereunder, any county or municipality may, in addition to its other powers and upon such terms, with or withoutconsideration, as it determines, do and perform any or all of the actions or things which, by the provisions of subsection (1), a public body is authorized to do or perform, including the furnishing of financial and other assistance."
Thus, your question is answered by the statutory scheme established by Part III, Chapter 163, Florida Statutes.
The Legislature has determined that a community redevelopment project undertaken pursuant to Part III, Chapter 163, Florida Statutes, is a proper subject for the expenditure of public funds and serves a public purpose[13] and has authorized the loan of municipal funds for carrying out community redevelopment.[14] Section 163.400, Florida Statutes, clearly authorizes a municipality to provide financial assistance for community redevelopment purposes and such assistance may be extended with or without consideration. In light of this legislative determination and assuming that the City of Fort Myers makes a similar determination that this is a proper subject for the expenditure of public funds, it would appear that the municipality may loan properly appropriated municipal funds to a redevelopment agency without consideration to facilitate community redevelopment.[15]
Therefore, it is my opinion that section 163.400, Florida Statutes, authorizes the City of Fort Myers to make interest-free loans of properly appropriated municipal funds to the Community Redevelopment Agency for the City of Fort Myers for projects declared by the city to represent a municipal purpose.
Question Two
Your second question relates to the time frame for retiring debt of the community redevelopment district.
Section 163.362, Florida Statutes, in describing the required contents of a community redevelopment plan, requires that every community redevelopment plan shall:
"Provide a time certain for completing all redevelopment financed by increment revenues. Such time certain shall occur no later than 30 years after the fiscal year in which the plan is approved, adopted, or amended pursuant to s. 163.361(1)."[16]
Thus, all redevelopment projects that may be financed by increment revenues must be completed in no more than 30 years from the fiscal year in which they are approved.
Section 163.385, Florida Statutes, gives local governmental entities wide latitude in issuing bonds for purposes of community redevelopment:
"Bonds issued under this section shall be authorized by resolution or ordinance of the governing body; may be issued in one or more series; and shall bear such date or dates, be payable upon demand or mature at such time or times, bear interest at such rate or rates, be in such denomination or denominations, be in such form either with or without coupon or registered, carry such conversion or registration privileges, have such rank or priority, be executed in such manner, be payable in such medium of payment at such place or places, be subject to such terms of redemption (with or without premium), be secured in such manner, and have such other characteristics as may be provided by such resolution or ordinance or by a trust indenture or mortgage issued pursuant thereto. Bonds issued under this section may be sold in such manner, either at public or private sale, and for such price as the governing body may determine will effectuate the purpose of this part."[17]
These bonds are tax exempt and not subject to the provisions of any other law or charter relating to the authorization, issuance, or sale of bonds.[18] Further, such bonds "do not constitute an indebtedness within the meaning of any constitutional or statutory debt limitation or restriction[.]"[19]
Section 163.385, Florida Statutes, establishes a scheme for the issuance and repayment of obligations issued for community redevelopment purposes. Under subsection (1)(a), redevelopment revenue bonds or other obligations issued to finance redevelopment projects must mature "within 60 years after the end of the fiscal year in which the initial community redevelopment plan was approved or adopted." However, redevelopment revenue bonds may not mature later than the expiration of the plan in effect at the time the bonds or obligations were issued.
Bonds, notes or other forms of indebtedness that are to be repaid with increment revenues must mature no later than "the end of the 30th fiscal year after the fiscal year in which increment revenues are first deposited into the redevelopment trust fund or the fiscal year in which the plan is subsequently amended."[20] However, in the event refunding bonds are issued under section 163.385, Florida Statutes, they may not mature later than the final maturity date of bonds or other obligations that are being paid or retired with the proceeds of the refunding bonds.
Finally, bond anticipation notes may be issued under Part III, Chapter 163, Florida Statutes, by a county, municipality, or community redevelopment agency and may also be renewed. The maximum maturity for any such note and any renewals may not exceed 5 years from the issuance of the original note.[21]
Thus, Part III, Chapter 163, Florida Statutes, establishes a framework for the repayment of bonds, notes and other obligations incurred for purposes of community redevelopment, depending on the type of obligation issued, the funds used for repayment, and any refunding or renewal of these obligations. In broad terms the statute establishes a repayment schedule of 60 years for redevelopment revenue bonds, 30 years for obligations pledging increment revenues, and 5 years for bond anticipation notes.[22]
Question Three
You ask whether, under the provisions of Part III, Chapter 163, Florida Statutes, there is a minimum amount of debt at which increment revenues need no longer be pledged.
Section 163.387, Florida Statutes, requires the establishment of a redevelopment trust fund after a community redevelopment plan is approved.[23] The trust fund is to be funded annually in an amount not less than that increment in the income, proceeds, revenues, and funds of each taxing authority derived from or held in connection with the carrying out of community redevelopment.
Section 163.387(1), Florida Statutes, as amended,[24] provides that the increment shall be that amount equal to 95 percent of the difference between:
"(a) The amount of ad valorem taxes levied each year by each taxing authority, exclusive of any amount from any debt service millage, on taxable real property contained within the geographic boundaries of a community redevelopment area; and
(b) The amount of ad valorem taxes which would have been produced by the rate upon which the tax is levied each year by or for each taxing authority, exclusive of any debt service millage, upon the total of the assessed value of the taxable real property in the community redevelopment area as shown upon the most recent assessment roll used in connection with the taxation of such property by each taxing authority prior to the effective date of the ordinance providing for the funding of the trust fund."[25]
By January 1 of each year, each taxing authority must appropriate its share of incremental tax revenues "for so long as any indebtedness pledging increment revenues to the payment thereof is outstanding (but not to exceed 30 years). . . ."[26]
Thus, the statute requires that incremental revenues be pledged to repayment "for so long as any indebtedness . . . is outstanding." The statute contains no threshold amount below which increment revenues are no longer required to be pledged for the repayment of indebtedness. In fact, the statute provides a penalty to be paid by any taxing authority that does not pay the increment to the trust fund by January 1.[27]
Pursuant to section 163.387(6), Florida Statutes, as amended, moneys in the redevelopment trust fund may be expended for undertakings of a community redevelopment agency including:
"(e) The repayment of principal and interest or any redemption premium for loans, advances, bonds, bond anticipation notes, and any other form of indebtedness.
(f) All expenses incidental to or connected with the issuance, sale, redemption, retirement, or purchase of agency bonds, bond anticipation notes, or other form of indebtedness, including funding of any reserve, redemption, or other fund or account provided for in the ordinance or resolution authorizing such bonds, notes, or other form of indebtedness."
Therefore, it is my opinion that there is no minimum amount of debt at which increment revenues need no longer be pledged pursuant to section163.387, Florida Statutes. Rather, increment revenues must be pledged according to the statutory formula so long as any indebtedness pledging those revenues is outstanding (not to exceed 30 years).
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Bannon v. Port of Palm Beach District, 246 So.2d 737, 741 (Fla. 1971). Cf., Poe v. Hillsborough County, 695 So.2d 672, 675 (Fla. 1997) (bond issue does not violate Article VII, section 10, Florida Constitution, so long as the project serves a "paramount public purpose," and any benefits to private parties from the project are incidental).
[2] State v. Housing Finance Authority of Polk County, 376 So.2d 1158,1160 (Fla. 1979). And see, Jackson Lumber Co. v. Walton County, 116 So. 771
(Fla. 1928).
[3] See, State v. Housing Authority of Polk County, supra. And see,Wald v. Sarasota County Health Facilities Authority, 360 So.2d 763 (Fla. 1978).
[4] See, s. 163.335(1), Fla. Stat.
[5] See, s. 163.340(9), Fla. Stat., defining "[c]ommunity redevelopment" as "undertakings, activities, or projects of a county, municipality, or community redevelopment agency in a community redevelopment area for the elimination and prevention of the development or spread of slums and blight, or for the reduction or prevention of crime, or for the provision of affordable housing, whether for rent or for sale, to residents of low or moderate income, including the elderly, and may include slum clearance and redevelopment in a community redevelopment area or rehabilitation and revitalization of coastal resort and tourist areas that are deteriorating and economically distressed, or rehabilitation or conservation in a community redevelopment area, or any combination or part thereof, in accordance with a community redevelopment area, or any combination or part thereof, in accordance with a community redevelopment plan and may include the preparation of such a plan." Seealso, ss. 163.340(10) and (11), Fla. Stat., respectively defining "[c]ommunity redevelopment area" and "[c]ommunity redevelopment plan."
[6] Section 163.356, Fla. Stat.
[7] Section 163.370, Fla. Stat.
[8] Section 163.385, Fla. Stat.
[9] Section 163.400, Fla. Stat.
[10] See, s. 163.335(3), Fla. Stat. ("the powers conferred by this part are for public uses and purposes for which public money may be expended . . . and the necessity in the public interest for the provisions herein enacted is hereby declared as a matter of legislative determination"); s. 163.335(6), Fla. Stat. ("the elimination or improvement of [housing shortages for low or moderate income residents and the elderly] is a proper matter of state policy and state concern and is for a valid and desirable public purpose"). See also, State v. Leon County, Florida,410 So.2d 1346 (Fla. 1982); State v. Miami Beach Redevelopment Agency,392 So.2d 875 (Fla. 1980).
[11] See generally, 81A C.J.S. States s. 205(b), p. 729. Cf., FloridaPower Corporation v. Pinellas Utility Board, 40 So.2d 350 (Fla. 1949).
[12] See, s. 163.340(2), Fla. Stat., defining the term "[p]ublic body" to include a municipality.
[13] Section 163.335(3), supra.
[14] Section 163.400(1), supra.
[15] And see, Op. Att'y Gen. Fla. 01-30 (2001) (city may lend properly appropriated municipal funds to community redevelopment agency pursuant to Part III, Chapter 163, Florida Statutes, for project declared by city to represent municipal public purpose); 85-96 (1985) (county may lend properly appropriated county funds to city and redevelopment agency pursuant to Part III, Ch. 163, Fla. Stat., for project declared to be county public purpose).
[16] Section 163.362(10), Fla. Stat.
[17] Section 163.385(3), Fla. Stat.
[18] Section 163.385(2), Fla. Stat.
[19] Id. And see, 163.387(5), Fla. Stat., providing:
"Revenue bonds issued under the provisions of this part shall not be deemed to constitute a debt, liability, or obligation of the local governing body or the state or any political subdivision thereof, or a pledge of the faith and credit of the local governing body or the state or any political subdivision thereof, but shall be payable solely from the revenues, provided therefor. All such revenue bonds shall contain on the face thereof a statement to the effect that the agency shall not be obligated to pay the same or the interest thereon except from the revenues of the community redevelopment agency held for that purpose and that neither the faith and credit nor the taxing power of the local governing body or of the state or of any political subdivision thereof is pledged to the payment of the principal of, or the interest on, such bonds."
[20] Section 163.385(1)(a), Fla. Stat.
[21] Section 163.385(1)(b), Fla. Stat.
[22] And see, s. 163.400(4), Fla. Stat., which, in addition to the authority granted by s. 163.385, Florida Statutes, authorizes a county or municipality to issue and sell general obligation bonds for community redevelopment purposes under the usual terms prescribed for the issuance of general obligation bonds by local governmental entities.
[23] See, s. 163.387(1), Fla. Stat., as amended by s. 8, Ch. 2002-294, Laws of Florida.
[24] See, s. 8, Ch. 2002-294, Laws of Florida, amending s. 163.387, Fla. Stat.
[25] The statute does authorize a county, in the ordinance providing for the funding of the redevelopment area, to determine that the amount to be funded by each taxing authority annually shall be less than 95 percent but the amount may not be less than 50 percent of the difference between paragraphs (a) and (b) of s. 163.387, Fla. Stat.
[26] Section 163.387(2)(a), Fla. Stat., as amended by s. 8, Chap.2002-294, Laws of Florida.
[27] Section 163.387(2)(b), Fla. Stat., provides for a penalty of 5 percent of the amount of the increment owed plus an assessment of interest at the rate of 1 percent for each month the increment is outstanding.