Dear Ms. Bru:
On behalf of several community redevelopment agencies located in the City of Miami, you have asked for my opinion on substantially the following question:
 Is a community redevelopment agency authorized to utilize tax increment revenues raised pursuant to section 163.387, Florida Statutes, to relocate a non-profit organization currently located within the redevelopment district by partially funding construction of a new facility that is outside the redevelopment area?
In sum:
 Payment of relocation expenses is limited by the provisions of section 163.370, Florida Statutes, which does not authorize the expenditure of funds for construction of facilities located outside the redevelopment area.
According to your letter, Camillus House, Inc., is a Florida non-profit corporation that currently operates a shelter facility within the boundaries of the Southeast Overtown/Park West Community Redevelopment Agency. Camillus House provides nighttime shelter, food, and various social services to the homeless population of the City of Miami. The shelter facility is relocating to a new building outside the existing boundaries of the community redevelopment agency but within an area that is proposed for future inclusion within the district. You question whether the redevelopment agency is authorized to provide funds to Camillus House for use in relocating its facility outside the district.
The Florida Constitution, in Article VII, section 10, prohibits the state or a county, municipality, special district, or any agency thereof from lending or using its taxing power or credit to aid any private corporation, association, partnership or person. The purpose of this provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefited."[1] Thus, the applicability of the prohibitions contained in the Constitution are dependent in part on whether a valid public purpose is involved. The determination of what constitutes a valid public purpose for the expenditure of public funds is, at least initially, a determination for the legislative body of the governmental entity.[2] A legislative declaration of public purpose is presumed to be valid and should be deemed correct unless so clearly erroneous as to be beyond the power of the legislative body.[3]
Part III, Chapter 163, Florida Statutes, the "Community Redevelopment Act of 1969," represents the state's response to the threat to the public health, safety, morals, and welfare from the development or spread of slums and urban blight.[4] The act encourages community redevelopment and provides for the redevelopment of slums and blighted areas.[5] Part III of Chapter 163, Florida Statutes, provides for the creation of community redevelopment agencies;[6] the powers to be exercised by local governmental agencies under the act;[7] the issuance of revenue bonds by governmental entities to finance community redevelopment;[8] and certain activities and areas of cooperation by public bodies for aiding in the planning, undertaking, or carrying out of community redevelopment and related activities.[9]
With respect to community redevelopment pursuant to Part III, Chapter 163, Florida Statutes, the Legislature has determined such activity to be a proper subject for the expenditure of public funds.[10] If the purpose to be achieved constitutes a valid public purpose, then the means to be applied to obtain such a purpose are largely within the discretion of the Legislature.[11]
Section 163.387, Florida Statutes, establishes a redevelopment trust fund for each community redevelopment agency created pursuant to section 163.356, Florida Statutes, and provides for its annual funding. Pursuant to subsection (1) of the statute, no community redevelopment agency may receive or spend any increment revenues unless and until the governing body has, by ordinance, provided for the funding of the redevelopment trust fund for the duration of the community redevelopment plan. Such ordinance may be adopted only after the governing body has approved the community redevelopment plan.
Section 163.387(2)(a), Florida Statutes, provides:
 "[U]pon the adoption of an ordinance providing for the funding of the redevelopment trust fund as provided in this section, each taxing authority shall, by January 1 of each year, appropriate to the trust fund for so long as any indebtedness pledging increment revenues to the payment thereof is outstanding (but not to exceed 30 years) a sum that is no less than the increment as defined and determined in subsection (1) accruing to such taxing authority. If the community redevelopment plan is amended or modified pursuant to s. 163.361(1), each taxing authority shall make the annual appropriation for a period not to exceed 30 years after the date the governing body amends the plan. However, for any agency created on or after July 1, 2002, each taxing authority shall make the annual appropriation for a period not to exceed 40 years after the fiscal year in which the initial community redevelopment plan is approved or adopted."[12] (e.s.)
The expenditure of moneys in the redevelopment trust fund are specifically authorized by section 163.387(6), Florida Statutes, "for undertakings of a community redevelopment agency as described in the community redevelopment plan," including:
 "The clearance and preparation of any redevelopment area for redevelopment and relocation of site occupants within or outside the community redevelopment area as provided in s. 163.370."[13]
 Thus, the statute expressly authorizes a community redevelopment agency to expend funds for relocation of site occupants. The statute does not define the term "relocation." While the term has been interpreted to include "[r]emoval and establishment of someone or something in a new place[,]"[14] section 163.387(6), Florida Statutes, expressly limits the agency's authority to make such expenditures to those provided in section 163.370, Florida Statutes.
Section 163.370(2)(k), Florida Statutes, in specifically referring to relocation expenditures, provides that a community redevelopment agency, as authorized by the local government creating the agency, may
"prepare plans for and assist in the relocation of persons (including individuals, families, business concerns, nonprofit organizations, and others) displaced from a community redevelopment area and to makerelocation payments to or with respect to such persons for movingexpenses and losses of property for which reimbursement or compensationis not otherwise made, including the making of such payments financed by the Federal Government." (e.s.)
The subsection does not refer to the expenditure of funds for capital improvements. While other provisions of section 163.370, Florida Statutes, authorize an agency to acquire property and make improvements thereon, such authority is limited to property located within the district. For example, section 163.370(2)(e)2. and 3., Florida Statutes, recognizes the authority of the agency to acquire real and personal property, together with any improvements thereon, and to hold, and improve for redevelopment any such property within the community redevelopment district. Section 163.370(2)(c)7., Florida Statutes, provides for the acquisition of property in the community development area.[15]
Thus, the authorization to pay relocation expenses in section 163.387(6), Florida Statutes, is limited by the provisions of section 163.370, Florida Statutes. That statute does not authorize the expenditure of funds for construction of facilities located outside the redevelopment area. Accordingly, I am of the opinion that while a community redevelopment agency may utilize redevelopment trust funds to relocate site occupants displaced from a community redevelopment area to a new location either within or outside that community redevelopment area so long as such actions are contemplated in the community redevelopment plan, it may not fund construction of private capital projects outside the boundaries of the district.
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] Bannon v. Port of Palm Beach District, 246 So. 2d 737, 741 (Fla. 1971). Cf. Poe v. Hillsborough County, 695 So. 2d 672, 675 (Fla. 1997) (bond issue does not violate Article VII, section 10, Florida Constitution, so long as the project serves a "paramount public purpose," and any benefits to private parties from the project are incidental).
[2] State v. Housing Finance Authority of Polk County,376 So. 2d 1158, 1160 (Fla. 1979). And see, Jackson Lumber Co. v. WaltonCounty, 116 So. 771 (Fla. 1928).
[3] See State v. Housing Authority of Polk County, supra. And see Waldv. Sarasota County Health Facilities Authority, 360 So. 2d 763 (Fla. 1978).
[4] See s. 163.335(1), Fla. Stat.
[5] See s. 163.340(9), Fla. Stat., defining "[c]ommunity redevelopment" as "undertakings, activities, or projects of a county, municipality, or community redevelopment agency in a community redevelopment area for the elimination and prevention of the development or spread of slums and blight, or for the reduction or prevention of crime, or for the provision of affordable housing, whether for rent or for sale, to residents of low or moderate income, including the elderly, and may include slum clearance and redevelopment in a community redevelopment area or rehabilitation and revitalization of coastal resort and tourist areas that are deteriorating and economically distressed, or rehabilitation or conservation in a community redevelopment area, or any combination or part thereof, in accordance with a community redevelopment area, or any combination or part thereof, in accordance with a community redevelopment plan and may include the preparation of such a plan." See also s. 163.340(10) and (11), Fla. Stat., respectively, defining "[c]ommunity redevelopment area" and "[c]ommunity redevelopment plan."
[6] Section 163.356, Fla. Stat.
[7] Section 163.370, Fla. Stat.
[8] Section 163.385, Fla. Stat.
[9] Section 163.400, Fla. Stat.
[10] See s. 163.335(3), Fla. Stat. ("the powers conferred by this part are for public uses and purposes for which public money may be expended . . . and the necessity in the public interest for the provisions herein enacted is hereby declared as a matter of legislative determination"); s. 163.335(6), Fla. Stat. ("the elimination or improvement of [housing shortages for low or moderate income residents and the elderly] is a proper matter of state policy and state concern and is for a valid and desirable public purpose"). See also State v. Leon County, Florida,410 So. 2d 1346 (Fla. 1982); State v. Miami Beach Redevelopment Agency,392 So. 2d 875 (Fla. 1980).
[11] See generally 81A C.J.S. States s. 205(b), p. 729. Cf. FloridaPower Corporation v. Pinellas Utility Board, 40 So. 2d 350 (Fla. 1949).
[12] Section 163.340(24), Fla. Stat., defines "[t]axing authority" to mean "a public body that levies or is authorized to levy an ad valorem tax on real property located in a community redevelopment area.
[13] Section 163.387(6)(d), Fla. Stat.
[14] Black's Law Dictionary Relocation p. 1317 (8th ed. 2004).
[15] See s. 163.370(2)(c)7., Fla. Stat., authorizing an agency's
 "[a]cquisition by purchase, lease, option, gift, grant, bequest, devise, or other voluntary method of acquisition of any other real property in the community redevelopment area when necessary to eliminate unhealthful, unsanitary, or unsafe conditions; lessen density; eliminate obsolete or other uses detrimental to the public welfare; or otherwise to remove or prevent the spread of blight or deterioration or to provide land for needed public facilities." (e.s.)
See also s. 163.370(4)(a), Fla. Stat.