114 So.2d 377 (1959)
CITY OF SARASOTA, a municipal corporation of the State of Florida, Appellant,
v.
SUNAD, INC., a corporation organized and existing under the laws of the State of Florida, Appellee.
No. 1009.
District Court of Appeal of Florida. Second District.
August 28, 1959.
Rehearing Denied September 23, 1959.
*378 Dexter, Conlee & Bissell, Sarasota, for appellant.
Clyde H. Wilson, Sarasota, for appellee.
REVELS, P.B., Associate Judge.
The appellant, the City of Sarasota, the defendant below, seeks a review of a declaratory decree holding certain sections of its sign ordinance unconstitutional. Sunad, Inc., the plaintiff below, a concern in the poster panel business operating and having outdoor posters within the city limits of said city brought suit for declaratory decree to determine the validity of certain portions of the defendant's ordinance. The plaintiff grounded its attack upon the provisions of the ordinance limiting the size of signs to 180 sq. ft., prohibiting combustible material on poster panels in fire zones 1 and 2 of the City of Sarasota and requiring the removal or alteration of signs not meeting the requirements of the ordinance. The lower court entered its decree holding the provisions of said ordinance, upon the three points enumerated above, arbitrary, discriminatory and unconstitutional.
The main points which are determinative of this appeal are, first; whether or not the sign ordinance makes reasonable classifications, and secondly; is the City of Sarasota authorized to take into account aesthetic factors as a proper subject of its exercise of police power. The plaintiff contends that the sign ordinance is designed to put it out of the poster panel business; therefore it is necessary to examine the classifications established in the ordinance. The record discloses the ordinance established two major classifications as follows: Class "A" (Point of Sale) group, and Class "B" (Non-point of Sale) group. These two major classifications are subdivided into three classes each, to-wit:
 Class "A" (Point of Sale)
 Wall signs  unrestricted
 Roof signs  180 sq. ft.
 Other signs (including
 ground signs)  180 sq.
 ft.
 Class "B" (Non-point of sale)
 Wall signs  300 sq. ft.
 Roof signs  180 sq. ft.
 Other signs (including
 ground signs)  180 sq.
 ft.
In addition to the above classifications roof signs are allowed to be measured on a cross sectional basis or skeletonized for the purpose of determining the maximum square feet allowed. The plaintiff has devoted substantial argument to the method of measuring roof signs which are permitted to be skeletonized and also wall signs, which are affixed to existing buildings, but the plaintiff is in the ground poster panel sign business and is not affected either way with the skeletonized roof signs, or wall signs. The point is whether or not the classification is founded upon a reasonable basis for the regulation of ground signs and whether or not the provisions, dealing with ground signs, applies to all citizens alike and with a reasonable degree of uniformity or standardization.
The legislative authority has a wide discretion in making classifications and unless such classifications are obviously arbitrary and erroneous they should be sustained. 6 Fla.Jur. Sec. 304:

*379 "* * * A classification by the Legislature will be upheld if it has some just, fair, and practical basis and real differences with reference to the subject regulated, and all doubts will be resolved in favor of the validity of the statute. If there is a reasonable and practical ground of classification for legislative regulations under the police power, it should be upheld even though some other classification, or the absence of specific classification, would appear to be more in accordance with the general welfare. * * *"
See also State ex rel. Pennington v. Quigg, 94 Fla. 1056, 114 So. 859.
We must recognize that the defendant is authorized and empowered to regulate and control the erection of all structures within the corporate limits, and certainly this includes structures such as ground signs which embraces poster panel signs, and that so long as the City establishes a reasonable classification or grouping for the purpose of such regulation it is operating within its charter and the State and Federal constitution. It is not necessary that the classifications or groupings meet with scientific precision or apply to everyone affected in the exact fashion if said classifications or groupings are founded upon a reasonable basis. We find under classification "B" (Non-point of sale) other signs (including ground signs), which includes plaintiff's type of signs as well as all other ground signs, are all limited to 180 sq. ft. and in fire zones 1 and 2 must not contain any combustible material.
The fact that a roof sign is permitted on a skeletonized basis in measuring only the face of the lettering to include the 180 sq. ft., allowing the total area encompassed to be larger than 180 sq. ft., or that wall signs affixed to existing buildings can exceed 180 sq. ft., does not in any way invalidate the ordinance regulating ground signs, if all ground signs are in the same or similar classification and all roof and wall signs are in other and different classifications. All signs cannot be measured or classified by one rule, but it is necessary to establish standards of uniformity as to each class or type of sign. The test is not that all classifications are controlled and regulated alike, but that all signs in each classification are controlled and regulated in a similar or like manner. As long as the classification applies to all signs of the same or similar type and in like manner, the ordinance is not arbitrary and discriminatory. The sign ordinance enacted by the defendant with a grouping designated "Other signs (including ground signs)" is reasonable and practical, and applies to all ground signs similar or in like manner; and in applying the foregoing tests we cannot agree with the lower court that the provision of said ordinance on this point is unconstitutional.
The lower court found that the City of Sarasota was a member of a class of cities entitled to predicate and exercise its police power on aesthetic considerations. The charter of the City of Sarasota, Sec. 2, Chapter 27883, Special Acts of 1951, reads as follows:
"For the purpose of promoting health, safety, morals, and the general welfare of the community and for the further purpose of protecting property values in business and residential areas and for aesthetic considerations, the City Commission, in addition to all powers and authority now delegated to it, is empowered to regulate and restrict location, number and use of buildings, structures and land for trade, industry, residences and other purposes, and to establish building lines in any or all such districts or parts of districts, in order to cause all houses, buildings, or other structures to be a uniform distance from the street line. * * *"
The lower court in announcing its final decree states as follows:

*380 "The city has introduced evidence and argument to the effect that Sarasota is a city of same general catering as Miami Beach, Miami, and places of that nature and I do agree that that is the desire of the local population. I believe that is established. We like to think of ourselves as a cultural center and a center of beauty and I think in large part the city has accomplished that so I feel aesthetics is a proper cause for sustaining this ordinance. * * *"
We agree that there is substantial competent evidence to support and sustain the finding of the chancellor that the defendant is entitled to take into account aesthetic considerations in the exercise of police powers. The City of Sarasota is the art center of Florida. It being the site of the famous Ringling Art Gallery, which contains one of the most valuable art collections in this country; it is also a cultural center and one of the most beautiful tourist areas in Florida. It is entitled to exercise its police powers to preserve and enhance its beauty and attractiveness as a lure, to the millions of people living in less favored areas, to come and visit and enjoy its natural and man-made beauty. The major part of the defendant's economy depends upon art, cultural and tourist attractions and to increase the lure of these attractions will benefit the entire community. The City of Sarasota should be permitted to exercise its governmental authority so as to increase its grace, charm and enduring beauty and exercise such power under the law to prevent and avoid a honky-tonk appearance. In the case of City of Miami v. Ocean and Inland Co., 147 Fla. 480, 3 So.2d 364, 367, and in other well reasoned cases, the Supreme Court of Florida has upheld aesthetic considerations for the benefit of the general welfare of the community.
"The limitation of the use by the plaintiff of his property seems a fair, just and reasonable contribution to the economic good, the prosperity, the welfare of the whole community and not so burdensome that it contravenes the organic inhibition against deprivation without due process."
In the case of Merritt v. Peters, Fla., 65 So.2d 861, 862;
"We held in that case that the attractiveness of a community like Miami Beach was a prime concern to the whole people and therefore affected the welfare of all. We think the principle applies to the territory across the bay where the appellant's property is situated. All in the area are regulated alike in the use of their property in constructing signs; all will profit if all obey; all will suffer if none is restricted."
"We must hold that although safety morals and health of the general public in the territory do not demand the restriction, the general welfare does * * *."
See also International Co., Inc. v. City of Miami Beach, Fla., 90 So.2d 906; and Dade County v. Gould, Fla., 99 So.2d 236; City of Daytona Beach v. Abdo, Fla.App., 112 So.2d 398.
In the case of the City of Miami v. Kayfetz, 92 So.2d 798, the Supreme Court of Florida has enunciated the tests that must be applied in construing the validity of an ordinance:
1. Assume that a valid ordinance was intended.
2. Construe the ordinance to be legal, if possible to do so, and strive to so construe it as to give reasonable effect to its provisions.
3. The courts should be very cautious in declaring a municipal ordinance unreasonable, there being a peculiar propriety in permitting the inhabitants of a City through its proper officials to determine what rules are necessary for their own local government.
*381 4. Where an ordinance is within the power of the municipality to enact it is presumed to be reasonable, unless its unreasonable character appears on its face.
5. If reasonable argument exists on the question of whether an ordinance is arbitrary or unreasonable, the legislative will must prevail.
For many years the Supreme Court of Florida has recognized that tourist centers of Florida were empowered to take into consideration the beauty as it applied to the general welfare of the people in the exercise of its police power. The lower court failed to apply the principles of law applicable to the facts in this case, in which the City of Sarasota by its charter and the laws of Florida is empowered to regulate structures based upon aesthetic factors. The policy making authority is vested in the legislative body and it should not be hampered or curtailed by the Court, if there is any reasonable basis in favor of an ordinance. City of Miami v. Kayfetz, supra [92 So.2d 801].
"In considering whether or not the ordinance now before us is reasonable, the test is not whether we think it a wise measure or the best of means of approaching a problem, but rather whether it has a rational relation to the public health, morals, safety or general welfare and is designed to correct a condition adversely affecting the public good. And the test must be applied in view of the character or nature of the condition to be remedied and all circumstances relating thereto."
We find no merit in the plaintiff's contention regarding the enforcement provisions of said ordinance.
For the foregoing reasons we are of the opinion that the declaratory decree should be reversed and plaintiff's action dismissed and it is so ordered.
ALLEN, C.J., and SHANNON, J., concur.