## BERMAN, et al v. CITY OF MIAMI, et al.
### No. 60 L 3308.

Circuit Court, Dade County.

December 28, 1960.

Reed & Manners, Miami, for petitioners.

Olavi M. Hendrickson, City Attorney, S. R. Sterbenz, Ass't. City Attorney, for respondents.

JOE EATON, Circuit Judge.

This cause came on to be heard on petition for certiorari of Irving Berman and Claire Gross, co-partners, d/b/a the Casbah, to have reviewed, pursuant to Florida Appellate Rule 4.1, an order or resolution of the city commission of the City of Miami, which revoked, after notice and a hearing by the commission, all City of Miami licenses issued to petitioners, doing business as the Casbah.

Petitioners urge that respondents departed from the essential requirements of law in that — (1) The provisions of the city charter and ordinances under which the commission purported to proceed are void and unconstitutional. (2) Respondents lacked substantial evidence to support their findings and conclusions. (3) Said resolution is so harsh and oppressive it transcends any authority respondents might have had. (4) In finding petitioners guilty of charges 1, 2, 3, 4, 24, 25, 26, 27, 28, respondents usurped judicial powers in determining that the acts complained of constituted a nuisance.

In their briefs respondents have apparently abandoned ground #2 (lack of evidence) but have in fact added a new ground, i.e., that respondents revoked their 1960-1961 liquor license although the resolution under which they were charged was directed only

to the 1959-1960 license. This court has examined the record and finds that there is sufficient evidence from which the commission could have found as it did, provided it had the power to do so.

Petitioners' main argument is based on the theory that the city has wrongfully attempted to abate a nuisance. Even assuming that petitioners are correct in their contention that a municipality has no right to declare and abate as a nuisance an establishment which featured indecent acts — a legal proposition which is extremely doubtful in view of the authorities (Knowles v. Central Allapattae Properties, 198 So. 819; City of Miami Beach v. Texas Co., 194 So. 368; Houston v. Walton (Colo.), 129 P. 263; 2 Wood Nuisances §§743, 744; 6 McQuillan (3rd) Municipal Corporations, §§24.70, 24.71, 24.118) and charter provisions (Miami Charter, §3 (p), (y), (z)) — the court does not understand this to be the legal effect of respondents' acts, nor the legal theory underlying them.

Rather, the commission has, after hearing, considered whether there have been infractions of city ordinances, sufficiently serious to warrant a revocation of petitioners' licenses as provided by charter and code provisions (Charter, §3(y) (z) (aa) (bb), §84; Code §§ 4-11, 4-12, 4-28, 4-29, 4-38, 35-1, 35-26, 35-10; ord. ##6515, 6615; 7 McQuillan (3rd) Municipal Corporations §§24.213; 9 McQuillan (3rd) §§26.80 et seq.). It is true that the word nuisance is used in the resolution to categorize the acts of petitioners' employees, but the license revocation proceeds directly from the finding that there has been a violation of city ordinances. In fact, there was evidence before the commission of conviction in the municipal court for these violations. When petitioners argue against respondents' right to declare and abate a nuisance, they overlook the fact that the license revocation is based upon other grounds. The power of the city to issue and revoke licenses for cause in a proper hearing is not open to doubt (State ex rel First Presbyterian Church v. Fuller, 187 So. 148; State ex rel First Presbyterian Church v. Fuller, 183 So. 726; Prettyman v. Florida Real Estate Commission, 109 So. 442; Towns & Watkins v. Tallahassee, 11 Fla. 130; Houston v. Walton, supra).

Whatever may be petitioners' right at this late date to argue a new ground, petitioners cannot prevail on their argument that because the hearing was directed only to its 1959-1960 licenses, respondents had no right to revoke its 1960-1961 license, issued routinely, presumably during the pendency of this matter. It does not appear anywhere in the record just when the 1960-1961 license was issued. It does appear that the 1959-1960 license was

issued on September 21, 1959, and the Code of the City of Miami provides, §4-38, as follows —

Sec. 4-38.   Duration.

Licenses required by this article shall expire on the thirtieth day of September of each year and shall be issued for a period of one year, except as hereinabove provided, and the sums required to be paid shall be paid on or before the first day of October . . .

Charges were preferred on September 7, 1960, and the order with which we are here concerned was entered, after a full hearing, on September 26, 1960, purporting to revoke all 1959-1960 and 1960-1961 licenses.

Quite obviously if any 1960-1961 licenses were issued they must have been issued either prematurely and/or during the pendency of the matter or subsequent to the order herein entered. The City Code §4-44 makes it impossible to obtain a valid license for 2 years after the revocation and §35-10 for 90 days. Petitioners certainly had notice of the pendency of the matter and were represented by counsel at the hearing. They are charged with knowledge of §4-44 and §35-10 and the results which flow automatically from the revocation. Any license routinely issued for 1960-1961, which under the code must have been predicated upon a valid 1959-1960 license, obviously falls when the 1959-1960 license is revoked before the new license becomes effective.

Petitioners' argument that the commission's order is harsh and oppressive states no legal grounds for relief in the face of petitioners' violations of the city code. The case petitioners cite (Tropical Park v. Ratcliff, 97 So. 2d 169) is not in their favor. There, there was a mere technical violation; here, there is intentional, willful violation of city ordinances.

Finally coming to petitioners' argument directed to the validity of the revocation provisions set out in the code — §35-10 is all that petitioners attack in their brief — we must remember and apply the tests of validity as set out in Miami v. Kayfetz, 92 So. 2d 798 (followed in City of Sarasota v. Sunad, 114 So. 2d 377; City of Wilton Manors v. Starling, 121 So. 2d 172). Those tests as set out in Sarasota v. Sunad, supra, are as follows —

1. Assume that a valid ordinance was intended.

2. Construe the ordinance to be legal, if possible to do so, and strive to so construe it as to give reasonable effect to its provisions.

3. The courts should be very cautious in declaring a municipal ordinance unreasonable, there being a peculiar propriety in permitting the inhabitants of a city through its proper officials to determine what rules are necessary for their own local government.

4. Where an ordinance is within the power of the municipality to enact it is presumed to be reasonable, unless its unreasonable character appears on its face.

5. If reasonable argument exists on the question of whether an ordinance is arbitrary *or* unreasonable, the legislative will must prevail.

The ordinance with which we are concerned reads as follows —

Sec. 35-10.  Revocation.

The license of any person for the operation of any business may be revoked by the city commission at any time, upon notice and hearing for violation of any ordinance of the city or law of the state or for any other good and sufficient reason; provided, however, that this section shall not affect the power of the municipal court to revoke certain licenses where such revocation is specifically provided for by ordinance.

Obviously to construe the ordinance as petitioners do, as referring to a violation by a third party, would render it invalid. However, the intent of the ordinance, read as a whole, is easily determined to be a violation by the licensee or his agent, and the phrase "any other good and sufficient reason" means "of the same sort previously set out," under the "ejusdem generis" rule of construction (Cf. 2 Horack's Sutherland on Statutory Construction (3rd Ed.) §4909; 6 McQuillan's Municipal Corporations (3rd Ed.) §§20.38-20.63).

The difficulty which arises in connection with the commission's order, and one of which the court must take judicial notice, is that the State of Florida pre-empts the field, so to speak, in the regulation of alcoholic beverages. Municipalities have only such power to regulate as the legislature has granted them (City of Wilton Manors v. Starling, 121 So. 2d 172; Simpson v. Goldworm, 59 So. 2d 511; Fleeman v. Vocelle, 37 So. 2d 164; Miami v. Kichinko, 22 So. 2d 627); and it has been held in a great many cases that such power is limited, despite charter provisions (cf. Miami v. Kichinko, supra) to *location, hours of operation* and *sanitary conditions* (State ex rel Anthony Distributors v. Pickett, 59 So. 2d 856; Simpson v. Goldworm, supra; Miami v. Kichinko, supra). This being so, the municipality, as a taxing expedient, (FSA 561.36; Bateman v. City of Winter Park, 37 So.. 2d 362), may require a city license, but it may not deny or revoke such a license of a state licensee. (State ex rel Anthony v. Pickett, supra; Bateman v. City of Winter Park, supra; and cf. Singer v. Scarborough, 20 So. 2d 126, where the converse is stated.) It appears that under FSA 561.29 (1) (a) & (c) the municipality might seek a revocation by the state of the state license.

The night club license is governed by different principles. The state has not attempted to regulate night clubs, their location, hours of closing, etc. This license is a municipal occupational li-

76

cense as required by the Miami City Code. The municipality may revoke it for cause and after a proper proceeding (Prettyman v. Florida Real Estate Commission, supra; Towns & Watkins v. Tallahassee, supra). Thus, the city may not prevent the state licensee from selling under their vendor's license, but it need not permit them to operate a night club to the detriment of the morals of the municipality and in the face of ordinance violation.

Therefore, that part of the commission's order which purports to revoke petitioners' liquor license must be vacated, but so much of the order as revokes petitioners' night club license is upheld. Certiorari is granted in part and denied in part (Hart v. Kapnias, 27 So. 2d 145).