### SPARKMAN v. CARTER, et al.
No. 75-2466-CA-ol-F.
Circuit Court, Brevard County.
September 10, 1975.

Walter Stockman of Stockman & Grass, Cocoa Beach, for the plaintiff.

Heskin A. Whittaker of Wittaker, Pyle & Stump, Orlando, for the defendants.

VOLIE A. WILLIAMS, Jr., Circuit Judge.

*Certifiate — questions certified from circuit court:* Pursuant to F.A.R. 4.6 and Article 5, §3(b)(1) of the Florida Constitution, the undersigned, sua sponte, a judge of this court, certifies the questions below, to the Supreme Court of Florida, for instructions, and says —

### STATEMENT OF FACTS

1. On July 18, 1975, plaintiff filed suit in this court against defendants, James E. Carter and Argonaut Insurance Company, said suit against defendant Carter being based on the alleged negligence of said defendant in treating plaintiff for a fracture of the proximal head of the fifth metatarsal bone of her right foot. A copy of plaintiff's complaint is annexed as Exhibit 1.

2. On July 31, 1975 defendant Carter moved this court to dismiss said suit on the grounds that this court lacked jurisdiction of the subject matter of the suit and of defendant Argonaut, alleging inter alia, that plaintiff had not complied with §§5 and 6 of Chap. 75-9, Fl. Sts. (1975) entitled "Medical Malpractice Reform Act," which became effective on July 1, 1975 creating new §768.133 of the Florida Statutes, which statute mandatorily requires cases such as the instant case to be filed pursuant to such newly created statute as a medical liability mediation claim, to be heard first before a liability mediation panel whose presiding member and judicial referee shall be a circuit judge; that plaintiff had not complied with such newly created statute by first filing her claim thereunder. Defendant Carter further indicated his special appearance to contest the jurisdiction of this court over defendant Argonaut, by alleging that defendant Carter's insurer was in fact Employers Surplus Lines Insurance Company. A copy of defendant's motion to dismiss is annexed as Exhibit 2.

3. On August 8, 1975 defendant's motion to dismiss was heard before this court. Plaintiff opposed defendant's motion on the grounds that the newly created statute was unconstitutional under Amendments 5 and 14 of the United States Constitution; Article 1, §§2, 9 and 21 of the Florida Constitution, and Article 5, §§2 and 13 of the Florida Constitution, specifying that the newly created statute deprived plaintiff of due process of law and of the equal protection of the laws, and that the newly enacted statute expressly and illegally controverts the 1968 holding of the Florida Supreme Court in Shingleton v. Bussey, 223 So.2d 713. It was plaintiff's position that —

    a. The new statute, making it *mandatory for a plaintiff to first submit to mediation* before filing a suit for relief

in a court of law, while at the same time *a defendant physician was allowed the option of submitting his defense to such claim to mediation* (§5, Chap. 75-9, Laws of 1975, 4th Legislature of Florida; Fl. St. 768.133(2) (emphasis supplied)), was a denial of due process and the equal protection of the laws under the United States and Florida constitutions.

b. The requirement of the new statute that in any civil medical malpractice action, the trial on the merits shall be conducted without reference to insurance, insurance coverage or joinder in the suit of the insurer as a co-defendant, was likewise unconstitutional under the above cited consitutional references.

c. The new statute did not treat plaintiff and defendant equally, thereby denying plaintiff her basic rights under Article 1, §2 of the Florida Constitution.

d. The new statute restrained plaintiff from timely access to the courts, thereby violating Article 1, §21 of the Florida Constitution.

4. This court agreed with and ruled in favor of the plaintiff, and found in addition to the above that the newly enacted statute violated —

a. Article 5, §13 of the Florida Constitution, by requiring a circuit judge to devote a portion of his time to serving as a judicial referee of a mediation panel (Fl. St. 768.133(1)).

b. Article 5, §2 of the Florida Constitution in that the legislature, by creating rules of pleading in the new statute (Fl. St. 768.133(2)), has enfringed upon the power of the Supreme Court. A copy of this court's order is annexed as Exhibit 3.

c. The 5th and 14th Amendments to the United States Constitution, in that the statute is special class action legislation, and thereby a denial of due process of and equal protection of the laws to a plaintiff (Fl. St. 768. 133(2), (10) and (11)).

5. With respect to defendant's special appearance in connection with defendant, Argonaut, plaintiff, pursuant to Fl. RCP 1.420(a) (1), and Fl. RCP 1.250(b), has dropped defendant, Argonaut, and has amended her complaint pursuant to Fl. RCP 1.190(a). A copy of said amended complaint is annexed as Exhibit 4. Although service of process on defendant Employers Surplus has not yet been

perfected the parties by oral stipulation, through their respective counsel, to this court, have agreed to permit the questions following to be certified for answer and instruction.

### QUESTIONS OF LAW TO BE ANSWERED

Decision in this case, having been rendered on said above latter date, the following questions were passed on by the decision —

A. Does Florida Statute 768.133 violate Amendments 5 and 14 of the United States Constitution?

B. Does Florida Statute 768.133 violate Article 1, §2 of the Florida Constitution?

C. Does Florida Statute 768.133 violate Article 1, §9 of the Florida Constitution?

D. Does Florida Statute 768.133 violate Article 1, §21 of the Florida Constitution?

E. Does Florida Statute 768.133 violate Article 5, §13 of the Florida Constitution?

F. Does Florida Statute 768.133 violate Article 5, §2 of the Florida Constitution?

\* \* \* \* \*

Excerpts from the brief filed in the Supreme Court by Walter Stockman, attorney for the plaintiff, are set forth below —

RE: QUEST. A: FLORIDA STATUTE 768.133
VIOLATES AMENDMENTS 5 AND 14 OF THE
UNITED STATES CONSTITUTION.

It is the Plaintiff's position that Florida Statute 768.133 (a) abridges the privileges and immunities of Plaintiff as a citizen of the United States; (b) denies to Plaintiff as a person, her liberty without due process of law; and (c) denies to Plaintiff as a person within the jurisdiction of the State of Florida the equal protection of its laws.

Before further discourse is attempted, however, it might be well to point out Plaintiff's reason for including in her argument Amendment 5 as well as Amendment 14 of the United States Constitution, i.e., Amendment 5, in and of itself, is not applicable to the instant case inasmuch as Amendment 5, being one of the first ten amendments to the United States Constitution, known as the Bill of Rights, was thereby one of the amendments long known as assuring the people *against encroachment by the Federal Government* on the people's rights. Again, in and of itself, it did not assure the people against

encroachment by the State Governments on the people's rights. The adoption of Amendment 14 to the United States Constitution, however, by including in its phraseology "privileges and immunities", "due process of law", and "equal protection of the laws", assured the people against encroachment by State Governments, (1 Constitution of the United States of America, revised and annotated 839-842, 1963 Ed., U. S. Government Printing Office, citing: Slaughter-House Cases, 16 Wall. 36; Spies v. Illinois, 123 U. S. 137; O'herb vs. Vermont, 144 U. S. 323; Maxwell vs. Dow, 176 U. S. 581; Patterson vs. Colorado, 205 U. S. 454; and Twining vs. New Jersey, 211 U. S. 78), most of which phrases are contained in Amendment 5.

Thus, while it is admitted that Fl. St. 768.133 does not by itself violate Amendment 5 to the United States Constitution, Amendment 14, being specific as to State Government encroachment as a result of the deficiency of Amendment 5, Amendment 5 is herein included only in conjunction with Plaintiff's position with respect to Amendment 14.

A. *Plaintiff's position is that Fl. St. 768.133 abridges her privileges and immunities as a citizen of the United States — the privileges and immunities clause of Amendment 14:*

Plaintiff contends that the statute, by mandatorily requiring her to first submit to meditation before filing a suit for relief in a court of law, abridges her liberty to choose the forum in which her claim should be heard, and her right to access to a court of justice in Florida.

The Supreme Court of the United States however, has never aggressively attempted a definitive enumeration of what privileges and immunities of U. S. citizens are protected against State encroachment. But in the Slaughter-House cases, it did suggest a partial enumeration, one of which was a person's right of access to the courts of justice in the several states (16 Wall 79).

While it may be argued that Fl. St. 768.133 does not abridge Plaintiff's right to access to a court of justice since the statute does terminate the jurisdiction of the mediation panel (Fl. St. 768.133 (2)) under certain conditions, its requirement that mediation be attempted before proceeding in accordance with law, is in essence an abridgement of Plaintiff's liberty to seek redress of her claim in a court of law when she so chooses.

Fl. St. 768.133 therefore violates the privileges and immunities clause of §1, Amendment 14 of the United States Constitution.

B. *Plaintiff's position is that Fl. St. 768.133 deprives her of her liberty without due process of law — the due process clause of Amendment 14.*

It would seem that before this position can be discussed, a definition of the term liberty is necessary, for at once it might seem that liberty refers only to exemption from physical restraint. In Meyer vs. Nebraska, 262 U. S. 390, 399, (cited in 1 Constitution of the U. S. A., revised and annotated, at page 1091) the court defined the term liberty as follows:

> ". . . Without doubt, it denotes not merely freedom from bodily restraint but also right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally *to enjoy those privileges recognized at common law* as essential to the orderly pursuit of happiness by free men" (emphasis supplied).

At common law one of the privileges a citizen enjoyed was the liberty to exercise his right to seek relief for a civil wrong in a court of law, and to file such a suit when he so chose, despite the fact that his time of choice might have precluded his ultimate success because of limitation of action, or other matters such as laches, waiver, estoppel, etc. But he had the liberty to choose the forum and the time. In the instant case, Plaintiff, under Fl. St. 768.133 has no choice of forum or of time.

Plaintiff realizes that with respect to a test of the constitutionality or validity of any legislation, there is a general presumption in favor of the validity of the legislation questioned (6 Fla. Jur. §75, et seq.) However, the foregoing argument is supported by the United States Court and in this regard, it is the duty of this court to follow the U. S. Supreme Court in interpreting the applicable provisions of the Constitution of the United States (ibid §69).

Fl. St. 768.133 also violates the due process clause of §1, Amendment 14 of the United States Constitution.

RE: QUEST. B: FLORIDA STATUTE 768.133
VIOLATES ART. 1, §2 OF THE FLORIDA CONSTITUTION.

Every word of a state constitution should be given its intended meaning and effect. (25A Fl. Sts. Anno. 21, citing Crawford vs. Gelchrist, 59 So. 963). Equality before law and uniformity as to person, place. *Practice and procedure* are essential to the proper administration of justice (ibid at page 29 citing North vs. State, 65 So.2d 77). Although the latter cited case involves a criminal action, the meaning of the phrase is applicable equally to civil cases. The words "equal before the law" imply a guaranty of the equal protec-

tion of the laws (ibid at page 30 citing State ex rel. Davis vs. Stuart, 120 So. 335; State ex rel. Atty. Gen. vs. City of Avon Park, 144 So. 306). And the constitutional right to the equal protection of the laws means that everyone is entitled to stand before the law on equal terms with others in a similar situation (ibid citing 26 So.2d 788).

Similarly, all parties litigant who are sui juris stand upon an equal footing, and are entitled to equal rights and protection and none to special privileges (ibid at page 31 citing Georgia Home Insurance Co. vs. Putnal, 49 So. 922; Georgia Home Insurance Co. vs. Hoskins, 71 So. 285).

How in the instant case then, can a person be required to adhere to a statute that makes it mandatory for that person to comply with a procedure specified by a law that was drafted to favor the type of professional defendant we have here, and yet that defendant is not at all required to adhere to the standard imposed on Plaintiff? The law should be as equally restrictive to the professional defendant with respect to his being *required* to submit to mediation as it is to a Plaintiff. True, it might be argued that Plaintiff stands on equal footing with all other plaintiffs similarly placed. But the latter cases cited refer to "all parties litigant who are sui juris". Thus, Fl. St. 768.133 should not arbitrarily permit a defendant not to respond to a mediation claim unless it punishes such non-responsive party by requiring him to be held in default.

All that has then been accomplished by Fl. St. 768.133 is to give lip service to the complaints of medical practitioners that their malpractice insurance premiums were too high, and the injured party is placed in the position of complying with the law, then subjecting himself or herself to the possibility of unnecessary delay and expense by waiting to ascertain whether the defending physician will in fact reply to the complaint.

It cannot be argued that since the statute permits a plaintiff to proceed at law, the party would not have been injured by the delay, for an actual case is now pending in the same court in which the instant case was filed, wherein the defendant physician failed to file an answer to the claim filed within the time period specified in Fl. St. 768.133, thereby setting the basis for a court order dismissing the medical liability mediation claim on the ground that failure to file an answer timely terminates jurisdiction of the court over the subject matter of the claim (Medical Liability Mediation Claim of Dortha Franzen, a/k/a Dortha McElwee as claimant, and I. Randall Ross and James Honig as defendants, civil action no. 75-02-MLMC-01-A, 18th Judicial Circuit, Brevard County, Florida.).

In the latter cited case the requirements of Fl. St. 768.133 forced the claimant to incur the expense of first initiating her claim under the statute and waiting for a response thereto. And when nothing was

forthcoming, she was then required to proceed at law. Thus she was burdened with what amounted to double filing fees and service of process charges, in addition to being required to live with an unconstitutional statute that not only contravened her inalienable right to be considered equal under the law procedurally with the parties who injured her, but which discriminatingly deprived her of her liberty unconstitutionally by denying to her the right not only to choose the forum in which to bring her action but the time when she should bring her action.

In the instant case it is clear that Fl. St. 768.133 violates Art. 1, §2 of the Florida Constitution.

RE: QUEST. C: FLORIDA STATUTE 768.133 VIOLATES ART. 1, §9 OF THE FLORIDA CONSTITUTION.

"Due process of law means course of legal proceedings according to rules and principles established in our system of jurisprudence to protect private rights" (25A Fl. Sts. Anno. 122 at note 22 citing South Florida Trust Co. v. Miami Coliseum Corporation, 133 So. 334, and Ryan's Furniture Exchange vs. McNair, 162 So. 483). Due process means that a state is without right to deprive a person of liberty by any act that has no reasonable relationship to a proper governmental purpose (ibid, citing State ex rel. Furman vs. Searey, 225 So.2d 430).

Liberty of course does not mean that an individual has the absolute and unqualified right to do anything that he or she desires. (Miami Home Milk Producers Assn. vs. Milk Control Board, 169 So. 541). We are all attuned to the fact that "liberty" has been historically left to be interpreted by our courts by applying our constitution to regulatory statutes, after fair hearing to both sides (ibid). But Fl. St. 768.133 does abridge Plaintiff's right to relief for a civil wrong in a court of law (see argument above — Part B of Question A.), for Plaintiff must first subject herself to a proceeding that does not also require her adversary to do so.

We are aware of the fact that the statute in question was purportedly enacted to protect the public; this protection however should extend to the entire public, and not just one special class of the public. In this case, the statute under the guise of protecting the public interest, in fact supports the medical practitioner by subjecting only the Plaintiff to the statute thereby interfering with her consitutional liberty of choice of forum. Plaintiff's constitutional liberty cannot be interfered with. (Ex. parte Messer, 99 So. 330).

Fla. Statute 768.133 does in fact violate Art. 1 §9 of the Florida Constitution by depriving Plaintiff of her constitutional liberty of choice of forum without due process of law.

RE: QUEST. D: FLORIDA STATUTE 768.133
VIOLATES ART. 1, §21 OF THE FLORIDA CON-
STITUTION.

The statute violates Art. 1, §21 of the Florida Constitution in that, by first requiring Plaintiff to submit to mediation, she is being denied access to a court of law wherein she should be permitted to obtain the remedy that is prescribed by law for the wrong done to her. The constitutional guaranty of the courts being open to redress wrongs, prohibits invasion by the State. (25A Fl. Sts. Anno. 408 at note 1, citing Spafford vs. Brevard County, 110 So. 451).

By denying to Plaintiff her right to choose the forum in which she should test her claim of wrong and for which she seeks a remedy, the legislature has in fact also denied to her, her liberty of choice without due process of law (ibid at note 3 citing State ex rel. Gore vs. Chillingsworth, 171 So. 649).

True, the statute in question allows Plaintiff to go to a court of law, when she has exhausted the procedures prescribed by the statute. But the procedural prerequisites prescribed by the statute unreasonably require Plaintiff to submit to the whim of defendant in that he may or may not respond to a medical malpractice liability claim, or if he does so respond, he can at any stage of the proceeding elect to withdraw, thus heightening the delay on Plaintiff's right to access to a court of law in the first place. This is clearly brought out in subsection 10 of Fl. St. 768.133 wherein is stated the provision permitting the claimant to seek redress in a court of law if the defendant rejects the decision of the hearing panel. At that point in time between 6 and 12 months could pass before a claimant could get in to court for justice, but not without delay, and in contravention of Art. 1, §21 of the Florida Constitution which in essence guarantees the adminstration of justice without delay.

Florida statute 768.133 violates Art. 1, §21 of the Florida Constitution in that it prescribes an unreasonable and unjustifiable delay before Plaintiff can seek a remedy for the wrongful act of Defendant (ibid at page 409, note 4, citing Blount vs. State Road Dept., 87 So.2d 507 and Rainey vs. Rainey, 38 So.2d 60).

RE: QUEST. E: FLORIDA STATUTE 768.133
VIOLATES ART. 5, §13 OF THE FLORIDA CON-
STITUTION.

The constitutional portion under argument clearly specifies "All justices and judges shall devote *full time* to their *judicial* duties." (emphasis supplied). There is no room for permitting any other interpretation of Art. 5, §13 of the Florida Constitution other than what is clearly specified therein.

116

Where a judge served as a member of a dual county Governmental Center Authority, the Attorney General in his opinion #069-62 dated August 5,1969, to the Governor opined that the circuit judge may not serve as such member. The Attorney General followed the rule set out in 79 So. 874 which held that the acceptance by the circuit judge of the second office, i. e., as a member of that Authority, automatically constitutes a vacation of his office as a circuit judge (26 Fl. Sts. Anno, 1976 pocket part at page 50, note 4).

In the instant case, the statute in question unequivocally "appoints" the judicial referee specifying that he shall be a circuit judge. (Fl. St. 768.133(1)). And in designating the function of the mediation panel the statute does not give the judicial referee any judicial duties whatsoever, except for some minor duties, i. e., that of determining the type of medical specialist who should hear the claim (ibid at subsection (2)); making a decision on challenges for cause against panel members (ibid at subsection (3)); and setting limitations on discovery (ibid at subsection (6)). While such statute specified functions may be judicial in nature, nothing else has been included in the list of duties of the judicial referee other than to preside at the meeting (whatever that means at this time). Although the statute does also refer to such judicial referee using the term "judge" (ibid at subsection (7)) it cannot by any stretch of the imagination include at least two functions of a judge, that of determining questions of law, and exercising the power of contempt.

Thus, under the ruling in In Re: Questions submitted by the Governor to the Supreme Court, 79 So. 874, were any circuit judge to actually perform even the remotest function implied in Fl. St. 768.133, he would automatically be considered to have abandoned his office as a circuit judge.

RE: QUEST. F: FLORIDA STATUTE 768.133 VIOLATES ART. 5 §2 OF THE FLORIDA CONSTITUTION.

The portion of the Florida Constitution referred to here is contained in sub. par. (2) of Sec. 2 of Art. 5. That subsection states:

(a) The Supreme Court shall adopt rules for the practice and procedure in all courts . . .

In direct contravention of the above-quoted portion, Florida Stat. 768.133 specifies rules of practice in subsections (2), (3), (4), (5), (7), (8), (9), (10). Such specifications are a clear infringement by the legislature on the powers of the Supreme Court as specified in the Florida Constitution.

While we here are generally not concerned with the effect of rules adopted by the Supreme Court which conflict with a statute, Fl. St. 25.371 does specify that rules of practice and procedure adopted by the Supreme Court which conflict with a statute, supersede the statute. Thus the legislature, in promulgating Fl. St. 25.371 recognized the supremacy of the power of the Supreme Court to regulate practice and procedure. How then can the legislature attempt to override their own recognition of the Supreme Court's power, by adopting the rules of practice and procedure specified in Fl. St. 768.133? The intent of the constitution was also followed in School Board of Broward County vs. Surette, 281 So. 2d 481.

For example, subsection (10) of the statute specifies that in any civil medical malpractice action, the trial on the merits shall be conducted without any reference to insurance, insurance coverage or joinder in the suit of the insurer as a codefendant. Such attempts to regulate matter related to the real party in interest have been declared unconstitutional. Thus where Fl. St. 455.06 provided that in a suit against a political subdivision, no attempt should be made to suggest the existence of insurance coverage, Fl. St. 455.06 was declared unconstitutional as being in conflict with practice rules as to real parties in interest and severance of parties; the statute also failed because it attempted to regulate severance of parties, the party in question being an insurer (1A Fl. St. Anno. 40 at note 3 citing School Board of Broward County vs. Surette, 281 So. 2d 481).

The Broward County School Board case was a 1973 case and it followed the case of Shingleton vs. Bussey, 223 So. 2d 713. In this latter case the circuit court of Leon County dismissed an insurer as a party. On appeal the decision was reversed (211 So. 2d 593). On certiorari this Honorable Court held that the plaintiff as a third party beneficiary of a motor vehicle liability policy has a direct cause of action against an insurer as a party defendant along with the insured. The Shingleton case overruled a 1936 case, Artille vs. Davidson, 170 So. 707, which held to the contrary.

In the instant case, it might be argued that the Shingleton case be distinguished from it because that case involved motor vehicle liability insurance, whereas the instant case involves medical malpractice insurance. However any attempt to so distinguish the Shingleton case must fall, for the nature of the tort is not determinative of whether an insurer can be a third party defendant; instead it is the very fact of insurance coverage for tort liability for a tort that governs liability of an insurer so as to allow it to be named as a third party defendant. (Shingleton vs. Bussey, 223 So. 2d 713). In this case, at page 715 the court upheld the District Court of Appeal which had concluded — "that a liability policy as the one here in-

volved should be construed as a quasi-third party beneficiary contract".

This court even indicated that the classic case of MacPherson vs. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F 696, illustrated the role of public policy in permitting this court to mould its decision.

And finally, any attempt to distinguish the Shingleton case from the instant case must fall also for the reason that in the Broward County School Board case, which was a 1973 case, the Court's decision referred to the Shingleton case (see page 482 of 281 So. 2d) *and* to Beta Eta House Corp. of Tallahassee vs. Gregory, 237 So. 2d 163. This latter case held — " . . . our decision in Shingleton was applicable not only to automobile liability insurance, but *also to other forms of liability insurance.*" (emphasis supplied).

This brief would not be complete without additional argument with respect to certain matters such as class legislation, and the constitutionality of the statute in question with respect to Article 5, §§2 and 13 of the Florida Constitution.

### I - CLASS LEGISLATION

It is the Plaintiff's position that Fl. St. 768.133 is class legislation of a nature that is prohibited by the "equal before the law" clause of the Florida Constitution.

Plaintiff concedes that certain types of class legislation are constitutional. For example, Plaintiff is aware of the case of State vs. Minge, 160 So. 670, wherein the Court stated:

> "The Legislature may single out and
> undertake to regulate a limited group . . .
> in order to regulate evil practices."

In the last case cited, the legislature sought to regulate the evil practices of certain security dealers as individuals, and not to regulate security dealers as possible litigants wherein they might be involved as parties to a suit. But even if this latter were true, were the legislature to attempt to regulate security dealers above as parties to litigation, the attempt must fall because such legislation to be constitutional should regulate *all* parties to litigation.

In the instant case, the failure of the legislature to regulate plaintiffs as well as defendants in medical malpractice suits *and* special regulatory proceedings, places Fl. St. 768.133 within the constitutional prohibition against class legislation, since the legislative classification, favoring defendants in medical malpractice claims, is arbitrary and erroneous and therefore must be stricken from the statute books (City of Sarasota vs. Sun. Ad., Inc., 114 So. 2d 377).

In one other Florida case that concerned the constitutional question of "equal protection", the court followed the principle that legislation which in carrying out a public purpose is limited in its application must treat, under like circumstances and conditions both in privileges conferred *and in liability imposed,* all persons alike (Davis vs. Fla. Power Co., 60 S. 759).

The constitutional inhibition that prevents the state from denying to its citizens the equal protection of the laws was designed to prevent any person or class from being singled out as a special subject of hostile or discriminatory legislation. (12 Am. Jur. 138 at §474). In the instant case, the plaintiff as a person within that group, who have or would have purported basis for medical liability malpractice claims, is discriminated against by being required to conform to a mandate requiring her to file her claim under Fla. St. 768.133 without requiring the defendants to respond and thereby be submitted to the Mediation Panel. (Davis vs. Fl. Power Co., 60 S. 759).

II - *(a) Additional Argument, Art. 5, §2, Fla. Const.* Rule 1.010, Fl. RCP, states:

> "The form, content, procedure and time for pleading in all special statutory proceedings shall be as prescribed by the statutes . . . These rules shall be construed to secure the just, speedy and inexpensive determination of every action."

The term "special proceeding" refers to proceedings at law as opposed to proceedings before a mediation panel which is not a court of law. (30 Fl. St. Anno 12 at note entitled "Law and Equity") But Plaintiff's constitutional objection does not concern itself with the real parties in interest, and severance of parties, and that has not been included as part of the reservation to the legislature as specified in Rule 1.010, Fl. RCP.

Nor can there be any objection based on Tibbetts vs. Olson 108 So. 679, which concerns constitutional power to "determine by what process and procedure legal rights may be asserted . . .", for this latter cited case can be distinguished from the case at bar in that the Tibbetts case speaks of legal rights to be determined, whereas the instant problem with respect to any proceeding under Fl. St. 768.133 is not concerned with any legal rights whatsoever.

*(b) Additional Argument - Art. 5, §13, Fla. Const.*

The separation of governmental powers is now and always has been a fundamental constitutional principle (8 Fla. Jur. 285 at §13). In applying that principle, one effect thereof is that no functions may be imposed on courts except judicial functions (ibid) and we have

already pointed out that the statute in question does not allow the "judge" to act in his capacity as a judge, but merely requires him to preside over the panel (see page 14 supra).

## CONCLUSION

For the reasons set forth above the answers to the questions certified from the Circuit Court for Brevard County should be answered in the affirmative. The provisions of Fla. St. 768.133 violate provisions of the federal constitution and the constitution of this state.

Excerpts from the brief filed in the Supreme Court by Heskin A. Whittaker, attorney for the defendants, are set forth below —

## ARGUMENT I

FLORIDA STATUTES 768.133 DOES NOT VIO-
LATE THE EQUAL PROTECTION OR DUE PRO-
CESS RIGHTS GRANTED BY THE UNITED
STATES CONSTITUTION OR THE FLORIDA
CONSTITUTION OF 1968.

The certified questions as presented by the trial court judge involve various provisions of the United States Constitution and the Florida Constitution. Inasmuch as Defendant feels the most substantial question on appeal is whether or not the new Medical Mediation Reform Act violates the equal protection rights of the Plaintiff by virtue of the fact that it is class legislation, the issues respecting due process will not be argued, as defendant feels there are no logical grounds on which to argue a violation of due process on the facts.

Article 1, Section 2 of the Florida Constitution of 1968 provides that, "All natural persons are equal before the law." It is conceded that the legislation involved, Florida Statute 768.133 (hereinafter the Medical Malpractice Reform Act or "MMRA") is class legislation, but it is well settled that class legislation *per se* is not unconstitutional. The statute books are replete with laws governing certain classes of persons and special statutory proceedings. Neither the 14th Amendment to the United States Constitution nor the state constitution prohibit regulatory legislation special in character. *State v. Minge,* 160 So. 670 (Fla., 1935). In *Minge,* certain security dealers assailed the constitutionality of the statute which required their compliance with the statute concerning the sale of stocks. The Court was quick to point out:

> "The legislature may single out and undertake to regulate a limited group which it deems a conspicuous example of a larger classification that might be regulated in its entirety in order to abate evil practices,

although logically the narrow class regulated may seem not to be distinquishable from other special groups not comprehended within the law. The equal protection clause of the Federal Constitution does not require that state statute shall cover the entire field of proper legislation in a single enactment. The fact that an act of the Legislature might well extend to other classes of persons, or to the entire permissible field of legislative activity in the premises, does not give rise to a constitutional objection on that score alone."

The Court has long since recognized that certain class legislation is not invalid just because it may result in some inequalities in practice. In a case involving the plaintiff attempting to contest the constitutionality of the guest statute on the basis that it required him to show gross negligence on behalf of the defendant, it was distinctly stated in *McMilliam v. Nelson*, 5 So.2d 867 (Fla., 1942):

"It is generally conceded that a classification having some reasonable basis does not offend against the constitutional provisions supra merely because it is not made with mathematical nicety or because in practice it may result in so many inequalities, and also that one who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary."

Concerning the equal protection argument, it is well settled that equal protection is satisfied if all the persons within the classification are treated equally, *Shelby v. Bullock*, 287 So.2d 18 (Fla., 1973). It seems obvious from the provisions of the MMRA that all plaintiffs who are seeking redress for injuries due to malpractice must proceed in a certain fashion, and all potential plaintiffs are treated equally under the statute. In *Greater Miami Financial Corporation v. Dickinson*, 214 So.2d 874 (Fla., 1968) the Supreme Court reasoned:

"The organic law does not prohibit reasonable classification of subjects of legislation as long as there is no discrimination within the class. A classification will be sustained if there is a reasonable relationship between the class affected, and the subject matter of the legislation."

Again, it is well settled that the legislature has wide discretion in making classifications and unless these classifications are obviously arbitrary and erroneous they will be sustained, *City of Sarasota v. Sun Ad, Inc.*, 114 So.2d 377 (2d DCA, 1959).

Perhaps the whole issue of constitutionality will be decided on whether this Court feels the legislation involved is reasonable and not arbitrary. The Court will have to judicially notice the voluminous legislative debates involved concerning the MMRA and the law review commentaries and opinions of other courts discussing the legislative objectives of the MMRA to determine whether the act has a reasonable relation to the objective as outlined by the legislature. Certainly the Supreme Court will not base its decision on whether or not the legislature had exhibited wisdom in its legislation. *Lasky v. State Farm Ins. Co.*, 296 So.2d 9 (Fla., 1974).

Although the honorable trial judge below ruled the MMRA unconstitutional on the basis that it was "solely for the benefit of defendant physicians in suits for their malpractice based on their negligence . . .", the order does not contend that the class of plaintiffs similarily situated would not be treated exactly the same. The Supreme Court of Florida must decide whether or not there is a reasonable relationship between the class affected and the subject matter of the legislation, and whether or not the legislation is for the benefit of physicians solely — but it will not be controverted that the MMRA affects all malpractice plaintiffs equally.

## ARGUMENT II

FLORIDA STATUTES 768.133 DOES NOT DENY A PLAINTIFF'S TIMELY ACCESS TO A COURT OF COMPETENT JURISDICTION AS PURSUANT TO ARTICLE I, SECTION 21 OF THE FLORIDA CONSTITUTION 1968.

It seems well settled in Florida jurisprudence that:

"The state has power to determine by what process and procedure legal rights may be asserted and determined, provided the procedure adopted as applicable to the particular case does not arbitrarily and unjustly discriminate so as to deny to a party the equal protection of the laws, and does afford reasonable notice and a fair opportunity to be heard before rights are decided . . .". *Tibbetts v. Olson*, 21 Florida 824, 108 So. 679 (1926).

It cannot be seriously contended that the plaintiffs are foreclosed from filing an action against an allegedly negligent physician since the MMRA gives them their common law right to do so after they comply with the special statutory requirements. Cases involving the Automobile Reparation Act, Chapter 627, F.S. and the Workmen's Compensation Law, Chapter 440, F.S. seem to be appropriate exam-

ples of statutes whose constitutionality has been attacked, but which have been found to be proper assertions of legislative authority. *McLarkey v. Florida Feed Mills, Inc.,* 268 So.2d 363, (Fla., 1972); *Laskey v. State Farm Ins. Co.,* 296 So.2d 9 (Fla., 1974). Although the defendant is mindful that a tort right should not be abolished without providing a reasonable alternative to protect same, the rights of certain plaintiffs can be changed through statutory enactment so long as the legislature has chosen a means which bears a reasonable relationship to the objectives of the legislation. *(Laskey v. State Farm Ins. Co.,* supra), and where an alternative procedural remedy is provided.

## ARGUMENT III

### FLORIDA STATUTE 768.133 DOES NOT VIOLATE ARTICLE 5, SECTIONS 2 AND 13 OF THE FLORIDA CONSTITUTION OF 1968.

The constutionality of the MMRA with respect to Article 5 of the Florida Constitution was raised *sua sponte* by the Court below (see Order). Assuming the trial court judge has the discretion to raise the constitutionality of the statute on his own motion, he apparently overlooked Rule 1.010, Rules of Civil Procedure, which provides:

> "The form, content, procedure and time for pleading in all special statutory proceedings shall be as prescribed by the statutes providing for such proceedings unless these rules specifically provide to the contrary." *See Lain v. Brith,* 313 So.2d 91 (4th DCA, 1975).

In the aforementioned judge's order, the court expressly found (at paragraph C) that the new statute "infringed on the constitutional right of the Supreme Court to regulate practice and procedure in the courts of Florida". The trial court judge was apparently unmindful at that time of the transition rule which was approved in the *Per Curiam* order of July 31, 1975 by the Supreme Court, IN RE: *Transition Rule No. 47773,* 316 So.2d 38 (Florida, 1975). In its opinion the Court states that:

> "This Court requested the Civil Rules Committee of the Florida Bar to present proposed rules for adoption. The following transition rule, modified from that submitted by the Civil Rules Committee, is hereby adopted as an emergency matter in the public interest."

The Court, therefore, is cognizant of the constitutional issues that may be presented by the statute, but has apparently made an initial judgment that the statute has a considerable public interest and in this instance, the state has not exceeded constitutional power to:

> "determine by what process and procedure legal rights may be asserted and determined . . .", see *Tibbetts v. Olson*, 21 Florida 824, 108 So. 679 (1926).

In addition, the transition rule apparently disposes of the trial court judge's finding that the statute also violated Article 5, Section 13 of the Florida Constitution by requiring circuit judges to act as "something other" than a judge by being the judicial officer on the mediation panel. The transition rules distinctly state:

> "For the purpose of the proceedings, the judicial referee is construed to be a judicial officer and his participation shall not be construed to be a violation of Canon V, subdivision E, Code of Judicial Conduct".

Thus, the judge on a mediation panel is performing judicial duties within the meaning of Article 5, Section 13. The case of *Johnson v. State of Florida*, 308 So.2d 127, 1st DCA, 1975, will probably be argued to the effect that the Medical Malpractice Act violates Article 5 since it is an attempt to create rules of practice or procedure. It should be noted, however, that the Medical Malpractice Act is a substantive enactment and not merely a procedural one. A plaintiff who comes within the provisions of the act, after following the procedure required by the new statute, has every right to proceed in the exact manner, procedurally, as he could prior to the enactment of the Medical Malpractice Act.

## CONCLUSION

Although defendants below concede the MMRA will have significant impact on the class of plaintiff suing under malpractice theory, the MMRA has a reasonable basis in the classification it imposes and has a reasonable relationship between the class affected and the subject matter of the legislation. The MMRA does not significantly impede a plaintiff's right of access to the courts and does not require the judiciary to perform tasks other than those of judicial officers of the state.

Defendants below respectfully submit that the act in question is constitutional, that the trial court below was erroneous in its findings, and this cause should be remanded with orders to dismiss the underlying action.